TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00501-CV








Eslon Thermoplastics; Tokyo Electron America, Inc. and Tokio Marine &

Fire Insurance Company, Appellants



v.




Dynamic Systems, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-08391-A, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







 After a water line broke causing $800,000 in damages to a semiconductor wafer
processor and the new building in which it was installed, owner Tokyo Electron America, Inc.
(Tokyo Electron) and its property insurer Tokio Marine & Fire Insurance Company (Tokio Marine) (1) 
sued Dynamic Systems, Inc., which installed the water line, and Eslon Thermoplastics (Eslon),
which manufactured the pipe fitting that broke. Eslon, in turn, sued Dynamic Systems for indemnity
and contribution. Dynamic Systems was granted summary judgment against Tokyo Electron and
Eslon based on a waiver of subrogation clause in the contract between Tokyo Electron and the
general contractor, which was incorporated into its contracts with subcontractors. Tokyo Electron
and Tokio Marine appeal that judgment, arguing that the water line was installed pursuant to a
separate contract between Tokyo Electron and Dynamic Systems, which had no waiver of
subrogation clause. In the event this Court reverses the summary judgment against Tokio, Eslon
urges that we reverse the summary judgment on its contribution claim. Because we hold that there
is a genuine issue of material fact whether the work occurred under a separate contract, we reverse
both summary judgments and remand to the trial court for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND

 Tokyo Electron manufactures, sells, and services semiconductor equipment. In April
1995, Taisei Construction Corporation agreed to be the design/builder of Tokyo Electron's new
corporate facility in Austin. (2) This facility included an on-site training lab to familiarize customers
with the operation of Tokyo Electron's Clean Track photoresist processing systems. Taisei hired
subcontractors to provide labor and materials on various parts of the project. Dynamic Systems
contracted to install the building's plumbing infrastructure. Taisei later asked Dynamic Systems to
submit a bid on bringing chilled water lines from the ceiling of the training facility down the wall
to a piece of machinery called the Clean Track Mark 8 wafer processor (Mark 8), which is used in
the production of semiconductor wafers. Dynamic Systems submitted a bid to Taisei in April 1996,
and performed the Mark 8 hookup in July 1996.

 Tokyo Electron began moving into the new facility during the first weekend of
August 1996. On August 3, one of the chilled water lines in the training lab burst, forcefully
spraying water that destroyed the Mark 8 and severely damaged parts of the building. Tokyo
Electron's investigation concluded that certain pipe fittings manufactured by Eslon were defective
or were negligently installed and that this was the cause of the accident that resulted in damages
exceeding $800,000.

 Taisei's contract with Tokyo Electron included a waiver of all claims for damage
arising out of the construction project, allocating such risks to insurers without a right of subrogation. 
Tokyo Electron was obligated to procure insurance to cover any losses that might occur during
construction regardless of blame. Taisei's subcontract with Dynamic Systems expressly incorporated
the waiver of claims. Tokyo Electron carried two types of insurance on the building, builder's risk
coverage and property insurance. Because the project was substantially complete at the time of the
loss, the builder's risk coverage was no longer in effect. Therefore, Tokyo Electron's property
insurer, Tokio Marine, covered the loss on the Mark 8. Tokio Marine now seeks to recover from
Dynamic Systems and Eslon.

 Tokyo Electron and Tokio Marine (collectively Tokio) sued Dynamic Systems and
Eslon (3) for strict liability, negligence, and breach of implied warranties. It was their position that
Dynamic Systems connected the chilled water lines to the Mark 8 under a direct contract with Tokyo
Electron, which had no waiver of claims for damages and no waiver of subrogation. Dynamic
Systems contends that Tokyo Electron and Taisei intended to avoid legal disputes such as this one
by allocating all risks of damage growing out of the construction project to insurance, without a right
of subrogation. Dynamic Systems insists that it was performing under the subcontract with Taisei
when it installed the chilled water lines and connected them to the Mark 8. It relies on the waiver
to defeat Tokio Marine's subrogation claims. In the trial court, Dynamic Systems filed a motion for
summary judgment based on this clause. The court granted the summary judgment in favor of
Dynamic Systems but then granted Tokio's motion for new trial, which asserted newly discovered
evidence. Dynamic Systems subsequently filed its second motion for summary judgment against
Tokio and a motion for summary judgment against Eslon, based on the derivative claims of
contribution and indemnity. The trial court granted both motions in favor of Dynamic Systems.

 Tokio and Eslon appeal. Tokio urges that the trial court erroneously granted summary
judgment because genuine issues of material fact exist as to whether the hookup was performed as
part of Dynamic Systems' subcontract with Taisei or pursuant to a separate contract with Tokyo
Electron that did not contain or incorporate the waiver. Should this Court reverse the summary
judgment against Tokio, Eslon seeks reversal of the summary judgment against Eslon on the issue
of contribution.


STANDARD OF REVIEW

 A summary judgment shall be rendered if the evidence properly before the court
indicates that "there is no genuine issue as to any material fact and the moving party is entitled to
judgment as a matter of law." Tex. R. Civ. P. 166a(c); see also Rodriguez v. Naylor Indus., Inc., 763
S.W.2d 411, 413 (Tex. 1989). The party moving for summary judgment has the burden of showing
that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. 
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to the
nonmovant will be taken as true in deciding whether there is a disputed material fact issue that would
preclude summary judgment. Id. at 548-49. Every reasonable inference must be indulged in favor
of the nonmovant and any doubts resolved in its favor. Id. at 549.

 When a defendant moves for summary judgment on an affirmative defense, as
Dynamic Systems does, it must conclusively establish each element of its defense as a matter of law. 
See Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 530 (Tex. 1997). A defendant is not
entitled to judgment as a matter of law on an affirmative defense if the plaintiff supplies evidence
as to any material fact issue relevant to the defense upon which reasonable minds could differ. 
Santanna Natural Gas Corp. v. Hamon Operating Co., 954 S.W.2d 885, 890 (Tex. App.--Austin
1997, pet. denied) (citing Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994)). Because the propriety
of a summary judgment is a question of law, we review the trial court's decision de novo. Id. When
the trial court has not stated the grounds for granting the motion, we may affirm the judgment if any
of the grounds advanced in the motion has merit. See State Farm Fire & Cas. Co. v. S.S., 858
S.W.2d 374, 380 (Tex. 1993). Eslon concedes that if we affirm this summary judgment in favor of
Dynamic Systems, then the trial court correctly granted Dynamic Systems' summary judgment
against Eslon. Therefore, we begin by addressing Dynamic Systems' summary judgment against
Tokio.


DISCUSSION

Waiver Clause

 A. Work v. Non-Work

 Tokyo Electron and Taisei entered a construction contract that obligated Tokyo
Electron, under the part of the agreement entitled "Terms and Conditions," to purchase and maintain
property insurance on the work at the site. This insurance was required to include the interests of
Tokyo Electron, Taisei, and "their respective contractors and subcontractors." The waiver clause
appears in the section entitled "Property Insurance," and provides:


The Owner and Design/Builder waive all rights against each other and the
contractors, subcontractors, agents and employees, each of the other, for damages
caused by fire or other perils to the extent covered by property insurance obtained
pursuant to this Paragraph 7.3 or other property insurance applicable to the Work,
except such rights as they may have to proceeds of such insurance held by the Owner
as trustee. The Owner or Design/Builder, as appropriate, shall require from
contractors and subcontractors by appropriate agreements, written where legally
required for validity, similar waivers each in favor of other parties enumerated in this
Paragraph 7.3. The policies shall be endorsed to include such waivers of
subrogation.



Taisei's subcontract with Dynamic Systems incorporated this waiver in article 1, which defines the
term "Contract Documents" as "the 'Contract' between [Tokyo Electron] and [Taisei] together with
all plans, drawings and specifications including the General Conditions and Special Conditions,
Addenda, Amendments, and/or instruments of like effect."

 Tokio asserts that the waiver does not apply, but even if it does, it only forecloses
claims for damage done to the building, not damage to machinery or equipment such as the Mark
8. This argument hinges on the following language in the waiver: "for damages caused by fire or
other perils to the extent covered by . . . other property insurance applicable to the Work." 
(Emphasis added.) Tokio posits that the Mark 8 was not part of the "work" performed by Dynamic
Systems and cites out-of-state cases that distinguish work and non-work in waiver of subrogation
clauses. See Fidelity & Guar. Ins. Co. v. Craig-Wilkinson, Inc., 948 F. Supp. 608, 614 (S.D. Miss.
1996) (holding that the waiver did not bar claims for damage to "non-Work property"); Town of
Silverton v. Phoenix Heat Source Sys., Inc., 948 P.2d 9, 12 (Colo. Ct. App. 1997) (stating that the
waiver does not show an intent to exculpate parties for "parts of the building other than the work");
St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc., 366 S.E.2d 480, 484 (N.C. 1988)
(holding that the contract was ambiguous as to whether the plaintiff had waived its claims); S.S.D.W.
Co. v. Brisk Waterproofing Co., 76 N.Y.2d 228, 233 (N.Y. 1990) (stating that the contract required
the owner of the construction project to acquire insurance for the "Work" and the contractor to
provide insurance for property damage it may cause "other than to the Work itself"); Travelers Ins.
Cos. v. Dickey, 799 P.2d 625, 630 (Okla. 1990) (concluding that the "agreement clearly is ineffective
to exonerate the contractor from liability for negligently inflicted harm to the owner's interior
property").

 Dynamic Systems urges that Tokio presents only a minority view that has been
rejected by a majority of the states, which originally supported the work/non-work distinction. See
ASIC II Ltd. v. Stonhard, Inc., 63 F. Supp. 2d 85, 92-93 (D. Me. 1999) (rejecting Craig-Wilkinson
and Dickey); Lloyd's Underwriters v. Craig & Rush, Inc., 32 Cal. Rptr. 2d 144, 148 (Cal. Ct. App.
1994) (rejecting S.S.D.W. and Dickey); Employers Mut. Cas. Co. v. A.C.C.T., Inc., 580 N.W.2d 490,
494 n.4 (Minn. 1998) (rejecting Craig-Wilkinson, S.S.D.W., and Dickey); Mu Chapter of Sigma Pi
Fraternity of the United States Inc. v. Northeast Constr. Servs. Inc., 709 N.Y.S.2d 677, 680 n.2
(N.Y. App. Div. 2000) (explaining that the waiver in the form contract discussed in S.S.D.W. was
later revised to overcome the holding in that case).

 Dynamic Systems, however, asserts that we need not address this question of first
impression in Texas because connecting the Mark 8 to the water lines was part of the work as
defined in this contract. The construction contract states that the "[w]ork comprises the completed
construction designed under the Project and includes labor necessary to produce such construction,
and materials and equipment incorporated or to be incorporated in such construction." (Emphasis
added.) We agree that the Mark 8 became equipment incorporated into the construction when it was
installed and connected to the chilled lines in the walls of the new facility. We hold that under the
contract, hookup of the Mark 8 was work and as such it was covered by the waiver. We overrule
Tokio's second issue.


 B. Modified Subcontract v. New Contract

 Dynamic Systems argues that the waiver evidenced the parties' intent to allocate all
construction risks to their insurers, making insurance the exclusive remedy for accidents and
damages. See Richmond Steel, Inc. v. Legal & Gen. Assurance Soc'y, 821 F. Supp. 793, 800 (D.P.R.
1993) ("The purpose of a waiver of subrogation clause in construction contracts is to avoid
disruptions and disputes between the parties working on a project. . . . The clause is also meant to
require a party to the contract to provide property insurance for all the parties." (Citations omitted.));
Chadwick v. CSI, Ltd., 629 A.2d 820, 825-26 (N.H. 1993). Dynamic Systems urges that Tokyo
Electron agreed to purchase sufficient insurance as its only remedy for damages and waived its right
to recover against Dynamic Systems, which defeats Tokio Marine's subrogation claim.

 Specifically, Dynamic Systems maintains that the connection was performed under
the subcontract between Taisei and Dynamic Systems, which implicates the waiver. The subcontract
includes "any supplemental written agreements made and entered into by the parties hereto
subsequent to the date of execution of the Subcontract." Dynamic Systems points out that Tokio
never produced a separate contract between Tokyo Electron and Dynamic Systems for the hookup,
and insists that the Mark 8 work was performed as a supplement to its subcontract with Taisei.

 During the performance of the subcontract, Dynamic Systems submitted a bid to
Taisei for the work necessary to connect the chilled water lines to the Mark 8. Taisei's project
manager authorized and initialed the work in a fax to Dynamic Systems stating, "Please Provide the
Air and Vacuum hook up." Dynamic Systems did the work and subsequently billed Taisei for the
hookup.

 Dynamic Systems contends that this evidence proves that the work was performed
as a supplement to its original subcontract with Taisei, citing Boudreaux Civic Ass'n v. Cox, 882
S.W.2d 543, 547-48 (Tex. App.--Houston [1st Dist.] 1994, no writ) (treating amendments to deed
restrictions as contracts among parties). In Boudreaux, the court held that "[a] modification to a
contract creates a new contract that includes the new, modified provisions and the unchanged old
provisions." Id. (citations omitted).

 Alternatively, Dynamic Systems urges that its written bid and Taisei's faxed approval
merged with their original subcontract. See Carr v. Weiss, 984 S.W.2d 753, 764 (Tex.
App.--Amarillo 1999, pet. denied). In Carr, the court of appeals explained that the "merger
doctrine" refers to the "absorption of one contract into another subsequent contract." Id. A
subsequent agreement does not supersede a prior agreement if it is not inconsistent with the prior
agreement, is made for separate consideration, or is such an agreement as might naturally be made
as a separate agreement by parties situated as were the parties to the written agreement Id. Whether
merger occurs, or whether another agreement is simply supplemental and does not contradict the
earlier agreement, is determined from the parties' intent. Id.

 Tokio counters that it offered ample contravening summary-judgment evidence
indicating that Tokyo Electron contracted directly with Dynamic Systems, (4) thereby creating a fact
issue as to whether the work was subject to the waiver. See Santanna, 954 S.W.2d at 890. As a result, Tokio urges that Dynamic Systems failed to establish as a matter of law all the elements of
its affirmative defense upon which summary judgment rests. See Velsicol, 956 S.W.2d at 530.

 The most persuasive evidence that Dynamic Systems performed the connection
services directly for Tokyo Electron, not as a part of the subcontract with Taisei, is found in a letter
from Taisei's project manager Richard Aman on July 16, 1996, informing Tokyo Electron that
Dynamic Systems "is proceeding on a cost plus basis and also expect[s] to be compensated by
[Tokyo Electron]. Please let me know if this is not your understanding. Should you want this to be
handled under the construction portion, [Taisei] will submit a change order for this work." (5)

 The construction contract between Tokyo Electron and Taisei required written change
orders. Article 8 of the contract provided that Tokyo Electron could order additions, deletions, or
other revisions, "and the contract sum and contract time shall be adjusted accordingly. Such changes
in the Work shall be authorized by Change Order . . . ." A change order, according to the contract,
is a written order signed by Tokyo Electron and Taisei authorizing a change in the work. "The
contract sum and contract time may be changed only by Change Order."

 Tokio emphasizes that there was no change order adjusting the contract sum, time,
or work to cover services for the hookup of the Mark 8. If the connection was to come within
Dynamic Systems' responsibilities under the subcontract, then Tokio insists that a change order was
required to show this as part of the scope of Taisei's work. Tokio maintains that Aman's letter
supports this interpretation: Taisei offered to submit a change order if Tokyo Electron wanted the
work covered under the construction contract. Aman testified in an oral deposition that Tokyo
Electron worked directly with Dynamic Systems to perform this work. As Taisei's project manager,
he acknowledged that the connection of the chilled lines to the Mark 8 was not contemplated by the
original contract: "In my contract with Tokyo Electron, I do not have the tool hook-up." Indeed, the
hookup is expressly excluded under the original construction contract.

 Dynamic Systems first responds that a change order was not necessary because the
subcontract between it and Taisei did not require formal change orders but only that changes be in
writing. Second, it contends that even if a change order were required, it would not yet have been
issued because at the time of the accident Dynamic Systems was still calculating the final bill to be
submitted to Taisei. Third, Dynamic Systems asserts that "a written contract not required by law to
be in writing, may be modified by a subsequent oral agreement even though it provides it can be
modified only by a written agreement." Robbins v. Warren, 782 S.W.2d 509, 512 (Tex.
App.--Houston [1st Dist.] 1989, no writ).

 Tokio's assertion is not that a change order was required between Dynamic Systems
and Taisei, but rather that a change order was required between Tokyo Electron and Taisei
concerning the overall scope of the work. Connection of the Mark 8 was expressly excluded from
the original construction contract. To add these services, to be performed by a subcontractor, to the
scope of work for which Taisei would eventually bill Tokyo Electron, a change order was required
to modify their contract, as Taisei noted. According to Aman's letter of July 16, Dynamic Systems
expected to be paid directly by Tokyo Electron for these services. Although Dynamic Systems
initially billed Taisei for the hookup, when it was not paid it did subsequently bill Tokyo Electron
directly. In Robbins, the court held that a question of fact existed as to whether there was a
supplemental agreement entered into between the parties. Id. On these facts, we cannot say as a
matter of law that the construction contract or the subcontract was modified by oral agreement to
include the hookup services that failed.

 In light of this evidence, we cannot say that Dynamic Systems has proved as a matter
of law that the hookup was performed under a modified subcontract that included the allocation of
risks to insurance and the waiver of subrogation. See Nixon, 690 S.W.2d at 548. Indulging every
reasonable inference in favor of Tokio, we conclude that there is a material fact issue as to whether
the hookup was performed under a separate contract between Tokyo Electron and Dynamic Systems
or under a modified subcontract incorporating the waiver. See id. at 549. We therefore sustain
Tokio's first issue.


Alternative Grounds

 Dynamic Systems also presented a no-evidence motion for summary judgment. See
Tex. R. Civ. P. 166a(i). The parties dispute whether Dynamic Systems was in a position to bring a
no-evidence motion for summary judgment. (6) Assuming this motion was properly raised, we hold
that Tokio produced sufficient competent summary-judgment evidence to defeat a no-evidence
motion for summary judgment. Sufficient evidence was raised, as previously discussed, in the form
of Aman's letter to Tokyo Electron, his deposition testimony, and the appendix to the construction
contract specifically excluding the hookup. We sustain Tokio's fourth point of error.


Affidavits

 Tokio contends that the trial court erred in striking parts of two affidavits as
conclusory and not based on personal knowledge. Aman, Taisei's project manager, and Thomas
Austin, a member of Tokyo Electron's project team, both provided affidavit testimony that included
this common statement, which the court struck:


The specific fitting, and related plumbing, for actual hook-up of [the Mark 8], was
selected, designed, and installed by Dynamic Systems, Inc., . . . at the request of
Tokyo Electron. I am personally aware that the hook-up of the fitting at issue was
not done as a change order to the original construction contract . . . . The tool hook-up was considered a separate contract made directly with TEA and DSI.



The court also struck the following sentence from Austin's affidavit: "I am aware of this fact because
I was involved in the approval and processing of DSI invoices covering tool hook-up." Additionally,
it struck from Aman's affidavit the sentence: "I am aware of this fact because I attended some of the
meetings between DSI and TEA concerning the 'hook-up' of the tools, including the Mark 8."

 The exclusion of evidence rests within the sound discretion of the trial court. Porter
v. Nemir, 900 S.W.2d 376, 381 (Tex. App.--Austin 1995, no writ). The trial court commits an
abuse of discretion only when it acts in an unreasonable or arbitrary manner, or acts without
reference to any guiding principles. Id.

 Dynamic Systems asserts that the sentences from Aman's affidavit were stricken
because they conflicted with his earlier deposition testimony that he had no knowledge of a separate
contract between Tokyo Electron and Dynamic Systems. (7) An individual "cannot file an affidavit to
contradict his own deposition testimony without any explanation for the change in the testimony, for
the purpose of creating a fact issue to avoid summary judgment." Farroux v. Denny's Rests., Inc.,
962 S.W.2d 108, 111 (Tex. App.--Houston [1st Dist.] 1997, no pet.). Such an affidavit presents no
more than a "sham" fact issue. Id.

 Dynamic Systems next argues that the stricken part of Austin's affidavit, which stated
he was involved in approving and processing invoices for the hookup, fails to show personal
knowledge of contracts between Tokyo Electron and Dynamic Systems. We may not consider
statements that offer no basis for purported knowledge about the contracts at issue. See Morin v.
Helfrick, 930 S.W.2d 733, 738 (Tex. App.--Houston [1st Dist.] 1996, no writ), overruled on other
grounds by Rizkallah v. Conner, 952 S.W.2d 580 (Tex. App.--Houston [1st Dist.] 1997, no writ).

 Further, Dynamic Systems maintains that these stricken statements are simply legal
conclusions, which may not support summary judgment as a matter of law. See Clement v. City of
Plano, 26 S.W.3d 544, 552 (Tex. App.--Dallas 2000, no pet.). Affidavits must state facts, not legal
conclusions. See id. For all the reasons advanced by Dynamic Systems, we cannot say the trial court
abused its discretion in striking this affidavit testimony. We overrule Tokio's third issue. But as we
have held, there is sufficient evidence apart from the stricken affidavits to create a genuine issue of
material fact that prevents disposition of this case by summary judgment.


Contribution

 Because we reverse Dynamic Systems' summary judgment against Tokio, we must
consider Eslon's argument that the trial court erred in granting Dynamic Systems' motion for
summary judgment against Eslon on the issue of contribution. A claim of contribution is derivative
of the plaintiff's right to recover from a joint defendant against whom contribution is sought. 
Shoemake v. Fogel, Ltd., 826 S.W.2d 933, 935 (Tex. 1992). In other words, Eslon's claim of
contribution derives from Tokio's right to recover from Dynamic Systems.

 Eslon maintains that on remand Dynamic Systems may be found jointly and severally
liable with Eslon for Tokyo Electron's damages, and Eslon then might be called upon to pay a
greater amount of the damages than its percentage of responsibility. In such a case, Eslon argues that
it would be entitled to a right of contribution, and that right should be determined in the main suit. 
See Tex. Civ. Prac. & Rem. Code Ann. § 33.013(b) (West 1997) (when a defendant who is jointly
and severally liable pays a percentage of damages that is greater than its percentage of responsibility,
then that defendant may have a right of contribution for the overpayment); cf. Casa Ford, Inc. v.
Ford Motor Co., 951 S.W.2d 865, 874-75 (Tex. App.--Texarkana 1997, pet. denied). Therefore,
Eslon asks us to reverse the summary judgment against it so that its claim of contribution can be
considered on remand. Eslon concedes that the trial court was correct in granting summary judgment
against its claim for indemnity.

 Dynamic Systems urges that it is free from liability as a matter of law, thus it is not
a "liable defendant" against whom judgment can be entered, and against whom a right of
contribution can be sought. See Tex. Civ. Prac. & Rem. Code Ann. §§ 33.003, .013(b) (West 1997). 
Because we have reversed the summary judgment against Tokyo Electron, Dynamic Systems cannot
say it is free from liability as a matter of law. In this circumstance, Dynamic Systems concedes that
"Eslon would be entitled to a remand of its contribution claims to await a determination that Eslon
is jointly and severally liable." We, therefore, sustain Eslon's issue and reverse the summary
judgment against Eslon on its contribution claim only and remand that issue for disposition in the
trial court.


CONCLUSION

 Tokio produced competent evidence to raise a fact issue that Dynamic Systems'
hookup work was performed under a separate contract that did not allocate the risks of damage to
insurance and had no waiver of subrogation. The trial court, therefore, erred in granting summary
judgment in favor of Dynamic Systems. Because we reverse the summary judgment against Tokio,
we also reverse the summary judgment against Eslon on its claim of contribution. We remand this
cause to the trial court for further proceedings consistent with this opinion.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Reversed and Remanded

Filed: June 29, 2001

Publish

1. [1] Tokio Marine urges that it is the real party in interest entitled to subrogation for the insurance
payments made to Tokyo Electron to cover the loss. Subrogation is a doctrine of equity and is the
substitution of another person in the place of the creditor, so that the person in whose favor it is
applied succeeds to the rights of the creditor in relation to the debt. Fleetwood v. Med Ctr. Bank,
786 S.W.2d 550, 553 (Tex. App.--Austin 1990, writ denied). Generally, an insurer paying a claim
under a policy becomes equitably subrogated to any cause of action the insured may have against a
third party responsible for the injury. Medina v. Herrera, 927 S.W.2d 597, 604 (Tex. 1996).
2. [2] Taisei Construction Company, in turn, formed a joint venture with Hensel Phelps Construction
Company to serve as design/builder and general contractor (collectively Taisei).
3. [3] Eslon, the manufacturer, sued Dynamic Systems for contribution and indemnity. Tokio also
sued Liebert Corporation, which was subsequently nonsuited.
4. [4] Tokio refers us to the provision of the construction contract that reserved Tokyo Electron's
right to award separate contracts in connection with other work at the site.
5. [5] Tokio also states that it offered additional evidence that raised a fact question that precluded
summary judgment, including a March 1996 letter Dynamic Systems sent to Taisei stating that its
scope of work did not include the "Process Systems in the Parts and Training Facility," a May 1996
letter from Taisei to Dynamic Systems stating that Dynamic Systems had substantially finished its
work under the construction contract (as evidence that the July 1996 hookup was excluded from the
construction contract), and the fact that Dynamic Systems did not increase its bonding requirements
even though the existing bond only covered the value of the work under the construction contract
and subcontract (as evidence that the hookup was not part of either one of these contracts). Tokio
also relies on statements in affidavits by Thomas Austin and Richard Aman, which we subsequently
hold were appropriately stricken.
6. [6] Tokio maintains that a no-evidence motion for summary judgment may only be brought against
a party on a claim on which the nonmovant bears the burden of proof at trial. See Tex. R. Civ. P.
166a(i). Waiver is an affirmative defense on which Dynamic Systems bore the burden of proof. See
id. 94; In re Epic Holdings, Inc., 985 S.W.2d 41, 57 (Tex. 1998). Tokio urges that because Dynamic
Systems bore this burden, it could not bring a no-evidence motion for summary judgment. Dynamic
Systems counters that it did not bring the no-evidence motion based on its own waiver claim; rather,
it asserts that it "moved for a no-evidence summary judgment on what is essentially a plea in
avoidance offered by [Tokyo Electron]." Dynamic Systems asserts that Tokyo Electron was
attempting to avoid the effect of the waiver by claiming that the work was performed outside of the
contracts, and thus, Tokyo Electron "raised a defense to [Dynamic Systems'] defense" to which a
no-evidence summary judgment motion was proper. We need not resolve this conflict to hold that
the evidence presented raised a fact issue that defeated summary judgment.
7. [7] Aman's deposition testimony is as follows:


Q. But do you know if there was any other different contract? You're not offering
testimony today about their [sic] being some other different contract between
Tokyo Electron and DSI, are you?


A. Not that I'm aware of. I don't know.


Q. You don't know? You have no personal knowledge?


A. I don't.