

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00702-CV

John Homer **COONLY**,
Appellant/Cross-Appellee

v.

**GABLES RESIDENTIAL SERVICES, INC.** d/b/a Gables West Avenue,
Appellee/Cross-Appellant

From the County Court at Law No. 1, Travis County, Texas
Trial Court No. C-1-CV-06-00039
The Honorable J. David Phillips, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Rebeca C. Martinez, Justice

Delivered and Filed:  November 13, 2013

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This appeal was transferred to this Court from the Austin Court of Appeals. John Homer Coonly appeals the trial court's order granting summary judgment and ordering that he take nothing on his claims against Gables Residential Services, Inc. d/b/a Gables West Avenue ("Gables"). Gables has filed a cross-appeal, arguing that the trial court erred in failing to award its attorney's fees. We affirm in part, and reverse and remand in part.

**BACKGROUND**

On September 8, 2000, Coonly entered into a lease agreement for an apartment located at 300 West Avenue, Austin, Texas (the "Property") with Post Properties, L.P. ("Post"). Coonly renewed his lease with Post and signed a new lease on October 1, 2002. On February 20, 2003, Gables bought the Property from Post. On September 3, 2003, Coonly entered into a lease with Gables for a term of October 1, 2003 to September 30, 2004. He also signed an "Access Gate Addendum," and a "Hold Harmless Notice and Acknowledgement."

Coonly kept six motorcycles in the Property's parking garage. On January 15, 2004, five of his motorcycles were stolen from the garage and one was vandalized. Coonly sued Gables for negligence, premises liability, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Gables moved for a no-evidence and traditional partial summary judgment on Coonly's negligence claims. With respect to the traditional motion for summary judgment, Gables attached the lease agreement, the access gate addendum, and the hold harmless notice and acknowledgement, arguing that Coonly's negligence claims were barred by waiver language in the agreements. The trial court granted Gables's motion and ordered that Coonly take nothing on his negligence claims against Gables. Gables then filed a no-evidence and traditional motion for partial summary judgment on Coonly's premises liability claims. As before, Gables argued waiver language in the agreements barred Coonly's premises liability claims. The trial court again granted partial summary judgment and ordered that Coonly take nothing on his premises liability claims. Gables then filed a no-evidence and traditional motion for final summary judgment on Coonly's claims under the DTPA. Gables also moved for an award of attorney's fees. The trial court granted summary judgment and ordered that Coonly take nothing on his claims under the DTPA. The trial court, however, declined to award Gables attorney's fees. Coonly appeals. Gables filed a cross-appeal with respect to the trial court's denial of attorney's fees.

**STANDARD OF REVIEW**

Gables filed traditional and no-evidence motions for summary judgment. To obtain a traditional summary judgment under Texas Rule of Civil Procedure 166a(c), a party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the respondent. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the respondent is true. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 548-49. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Once the movant has established a right to summary judgment, the burden shifts to the respondent to present evidence that would raise a genuine issue of material fact. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Under Rule 166a(i), a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt-1997. In reviewing a trial court's order granting a no-evidence summary judgment, we consider the evidence in the light most favorable to the respondent and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* at 751; *see* TEX. R. CIV. P. 166a(i).

### LEASE AGREEMENT, GATE ADDENDUM, AND HOLD HARMLESS ACKNOWLEDGEMENT

Gables filed its traditional motions for summary judgment based on the Lease Agreement, the Gate Addendum, and the Hold Harmless Acknowledgement signed by Coonly, which it attached as summary judgment evidence. The Lease Agreement is a form drafted by the Texas Apartment Association. Paragraph 24 of the Lease entered into by Coonly and Gables states the following:

> **RESIDENT SAFETY AND PROPERTY LOSS**. You and all occupants and guests must exercise due care for your own and other's safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 5. Window screens are not for security or keeping people from falling out.
>
> **Smoke Detectors**. We'll furnish smoke detectors as required by statute or city ordinance, and we'll test them and provide working batteries when you first take possession . . . .
>
> **Casualty Loss**. *We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruptions of utilities, theft, or vandalism unless otherwise required by law.* We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, you must – for 24 hours a day during freezing weather – (1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damages to our and others' property if damage is caused by broken water pipes due to your violating these requirements.
>
> **Crime or Emergency**. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. *You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal*

*conduct of other persons, including theft, burglary, assault, vandalism, or other crimes.* We're not obligated to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law enforcement agency. You must also furnish us with the law enforcement agency's incident report number upon request.

(emphasis added). Coonly and Gables also entered into an Access Gate Addendum. In part, the

gate addendum stated the following:

4.     Resident(s) acknowledges and agrees that Resident(s) security is the responsibility of the local law enforcement agency and Resident(s) self. In the event that Resident(s) are in need of police protection of any kind, Resident(s) will contact the local law enforcement agency. Resident(s) should not contact the answering service or management office for Resident(s) security needs for this could only delay the response time.

5. *Resident(s) agrees the Manager's installation or use of the Gate does not constitute a voluntary undertaking, representation or agreement by Manager to provide security to Resident(s), Resident(s) family, Resident(s) guests, or other occupancy of Resident(s) unit. There is absolutely no guarantee that the presence of a Gate will in any way increase Resident(s) personal security or the safety of Resident(s) family or guests or their respective belongings. The Gate is a mechanical device and can be rendered inoperative at any time. Manager is not an insurer of Resident(s), Resident(s) family, Resident(s) guests or other occupants and Resident(s) agrees to assume all responsibility for obtaining insurance to cover losses of all types. Resident(s) acknowledges that Resident(s) personal security is Resident(s) responsibility.*

6. *Resident(s) agrees the Manager is not liable to Resident(s), Resident(s) family, Resident(s) guests or other occupants for any injury, damages, or loss whatsoever which is caused as a result of any problem, defect, malfunction or failure of the performance of the Gate. Resident(s) further agrees that Manager is not liable for injury, assault, vandalism or any other crime. Resident(s) acknowledges that neither Manager nor Manager's agents, contractors, employees or representatives shall be liable in any way for any disruption in the operation or performance of the Gate. In consideration of Manager's attempt to better serve Resident(s) by protecting the Property, Resident(s) agrees that Resident(s) shall never make demand upon, look to, institute or prosecute suit against Manager, or any of Manager's agents, contractors, employees or representatives, their heirs, successors or assigns, for any damages, costs, loss of personal property, damages or injury to Resident(s) person as a result of, arising out of or incidental to the installation, operation, repair or replacement, or use of the Gate. This is an express covenant not to sue and Resident(s) releases Manager, Manager's agents,*

*contractors, employees and representatives, their heirs, successors and assigns of and from any and all liability connected with the Gate.*

(emphasis added). Coonly also signed a Hold Harmless Notice and Acknowledgement, in which Coonly agreed that Gables "does not promise, warrant or guarantee the safety and security of Resident, Resident's Group (herein defined as Resident's family, guests, invitees, agents, employees or other persons associated with Resident) or Resident's personal property against the criminal actions of other residents or third parties." The acknowledgement further provided,

> *It is a fact that no security system, including controlled access gates, courtesy patrol services or electronic intrusion safety devices can guarantee protection against crime. Even elaborate security systems are subject to mechanical malfunction, tampering, human error or personnel absenteeism, and can be defeated or avoided by clever criminals. Further, repairs to such devices cannot always be completed immediately. Therefore, residents should always proceed on the assumption that no security systems exist.* . . . Therefore, Management does not warrant that any security systems, security devices, or services employed at this community will discourage or prevent breaches of security, intrusions, thefts or incidents of violent crime.

(emphasis added). The acknowledgement further provided the following:

> I have read, understood and agree with the above notice. *I have received no representations or warranties, either expressed or implied, as to the overall safety of the property and/or any security system on the property. Management has not, in any way, stated or implied to me that security of person or property is provided, promised, guaranteed or that the apartment community was or will be free from crime.*

(emphasis added).

## NEGLIGENCE

Gables filed a traditional motion for summary judgment on Coonly's negligence claims, arguing the language from the documents listed above (collectively "the agreements") prevents Coonly from maintaining a lawsuit for negligence. On appeal, Coonly argues the above language does not bar his negligence claims. He emphasizes that paragraph 24 of the Lease Agreement states that Gables is not liable for loss of personal property from theft or vandalism "unless otherwise

required by law." According to Coonly, the "common law of negligence is the applicable law, and the common law requires tortfeasors to compensate innocent victims of their negligence." Under Coonly's interpretation, however, all common law causes of action would be excluded from the general waiver of liability provision, thus resulting in a meaningless waiver of liability provision. We decline to read the provision in such a way as to render it meaningless.

Coonly also argues that the allegations in his petition do not fall within the above waiver language in the agreements. In his petition, Coonly alleged that Gables "failed to maintain security measures, failed to notify residents of inoperative security measures, failed to otherwise guard against theft during time of inoperative security measures, and failed to adequately respond to requests to maintain security measures, resulting in the theft of several motorcycles belonging to Coonly." Coonly argues that the waiver language above does not bar negligence claims but instead bars only those claims based on breach of security, or breach of warranty or guarantee. We disagree. "Exculpatory clauses between landlord and tenant are generally upheld as to future liability for negligence." *Porter v. Lumbermen's Inv. Corp.*, 606 S.W.2d 715, 717 (Tex. Civ. App.—Austin 1980, no writ).[1] The language above specifically enumerated losses due to theft and identified the exact circumstances under which Gables sought to relieve itself of liability in this case. We hold that the trial court did not err in construing the above language to bar negligence claims brought by Coonly.

Alternatively, we note that in addition to its traditional motion for summary judgment, Gables also filed a no-evidence motion for summary judgment on Coonly's negligence claims.

---

[1] "Such agreements are invalid, however, where there is such gross disparity of bargaining power as to compel the lessee to agree." *Porter*, 606 S.W.2d at 717. As explained below, there is no evidence of such a gross disparity in this case.

Coonly failed to attach any summary judgment to its response.[2] Thus, Coonly failed to meet his burden, and the trial court did not err in granting summary judgment based on Gables's no-evidence motion for summary judgment.

### PREMISES LIABILITY CLAIMS

Gables also filed a traditional motion for summary judgment, arguing that Coonly's premises liability claims were barred by the language in the above agreements. On appeal, Coonly argues that the agreements should be held invalid because there is a gross disparity of bargaining power between the parties and that as a tenant, Coonly was "virtually compelled to submit to such provision." However, "adhesion contracts are not *per se* unconscionable or void." *In re Pearl Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (emphasis in original). Unconscionability is determined on a case-by-case basis by looking at the totality of the circumstances as of the time the contract was formed. *See Pony Express Courier v. Morris*, 921 S.W.2d 817, 821 (Tex. App.—San Antonio 1996, no writ); *see also Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied). "Proof of unconscionability begins with two broad questions: (1) the procedural aspect, *i.e.*, how did the parties arrive at the terms in controversy; and (2) the substantive aspect, *i.e.*, are there legitimate commercial reasons justifying the terms of the contract." *Ski River*, 167 S.W.3d at 136; *see also Pony*, 921 S.W.2d at 821. "In other words, in deciding the fairness of a contract's substantive terms, the court must also consider whether there were 'procedural abuses,' such as an unfair bargaining position between the parties at the time the agreement was made." *Ski River*, 167 S.W.3d at 136. "Under Texas law, the party asserting unconscionability of a contract bears the burden of proving *both* procedural and substantive unconscionability." *Id.* (emphasis in original). In determining whether a contract is

---

[2] Coonly's response does refer to discovery responses made by Gables. However, Coonly did not attach such responses as summary judgment evidence.

unconscionable, a court examines (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining" ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Id.* Factors that may contribute to an unconscionable bargaining process include the following: (1) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and (2) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement. *Id.*

Here, there is no evidence in the summary judgment record regarding the particular circumstances of the respective parties. For example, Coonly states in his brief that he had no representation of counsel at the time any documents were signed. Coonly, however, did not attach any summary judgment evidence in his response to support such an assertion. Coonly also claims that Gables is "'an award winning, vertically integrated real estate company specializing in the development, construction, ownership, acquisition, financing and management of multifamily and mixed-use communities . . . [and] manages approximately 38,000 apartment homes and 400,000 square feet of retail space' in at least 14 metropolitan areas coast to coast." However, Coonly also did not attach any summary judgment evidence to support this assertion. There is simply no evidence in the summary judgment record to show the respective bargaining positions of the parties or the sophistication of the parties.

Coonly next argues that the waiver language contained in the agreements proves that the agreements are unconscionable. Coonly complains that the Lease Agreement is a "form contract written by the Texas Apartment Association, Inc. and rife with boilerplate language." He argues a "cursory reading of the document further demonstrates its gross one-sided nature regarding the

multitude of affirmative duties imposed on the tenant as compared to the near-blanket waiver of liability by Gables." He similarly complains that Hold Harmless Notice and Acknowledgement, and the Gate Addendum contained "boilerplate" language. In reviewing the agreements, we disagree that the language contained in the agreements makes the agreements per se unconscionable. Nor does the fact that the Lease Agreement is a form contract written by the TAA or the fact the agreements contained boilerplate language mean that the agreements are unconscionable.

Coonly next argues that the exculpatory clause contained in the Lease Agreement is unenforceable because the exculpatory language was not conspicuous. He argues that the clause is buried in boilerplate language. A contract that "fails to satisfy either of the fair notice requirements [*i.e.*, express negligence and conspicuousness] when they are imposed is unenforceable as a matter of law." *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). The exculpatory clause in the Lease Agreement is its own paragraph and is set apart by an extra blank line between it and the previous and subsequent paragraphs to differentiate itself from the body of the contract. Its title "Casualty Loss" is in bold typeface. There are also *two* other addendums releasing Gables from liability, which were separately signed by Coonly. The conspicuous requirement was met. We hold the trial court did not err in determining that the agreements barred Coonly's premises liability claims.

## DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT

Gables then filed a third motion for no-evidence and traditional summary judgment on Coonly's claims under the DTPA. As summary judgment evidence, Gables again attached the agreements. It also attached excerpts from Coonly's deposition testimony. Gables argued that Coonly's claims under the DTPA were waived by language in the agreements. It also argued that any and all representations alleged by Coonly were made by its predecessor, Post. Coonly

responded to Gable's motion, arguing that the waiver language in the agreements did not meet the statutory requirements under the DTPA. *See* TEX. BUS. & COMM. CODE ANN. § 17.42 (West 2011). Coonly further argued that there was summary judgment evidence to support *Gables* making representations to Coonly. The trial court disagreed and granted summary judgment.

On appeal, Coonly first argues that the trial court erred in granting summary judgment because the language in the agreements relied on by Gables does not meet the statutory requirements of the DTPA. We agree. Section 17.42(a) provides that any waiver by a consumer of the provisions of the DTPA "is contrary to public policy," and "is unenforceable and void" unless (1) the waiver is in writing and signed by the consumer; (2) the consumer is not in a significantly disparate bargaining position; and (3) the consumer is represented by legal counsel in seeking or acquiring the goods or services. TEX. BUS. & COMM. CODE ANN. § 17.42(a) (West 2011). Further, any waiver must meet the following requirements:

(1) it must be conspicuous and in bold-face type of at least 10 points in size;

(2) it must be identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

(3) it must be in substantially the following form:

> "I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver."

*Id.* § 17.42(c). Here, the waiver language in the agreements does not meet section 17.42(c)'s requirements. *See id.*

Coonly next argues that there was summary judgment evidence that Gables made representations to him for goods or services that had characteristics which they did not. *See* TEX. BUS. & COMM. CODE ANN. § 17.46(b)(5) (West 2011) (stating that under the DTPA, "false,

misleading, or deceptive acts or practices" include "representing that goods or services have . . . characteristics . . . which they do not have"). He points to his affidavit, which was attached to his response to Gables's motion for summary judgment with respect to his DTPA claims. In his affidavit, Coonly affirms the following:

- Prior to the incident complained of, I made between five and ten oral complaints to Gables regarding the unsatisfactory operation or complete inoperation of the access gate(s) to the garage on Gables' Property.

- On the occasions that I made oral complaints regarding the unsatisfactory operation or complete inoperation of the access gate(s) to Gables, I was told something to the effect of, "thank you, we'll take care of it."

- Based upon assertions intimating that the access gate(s) would be repaired, I relied upon same and continued to store the motorcycles at issue in the garage.

- Prior to the incident complained of, a maintenance worker for Gables indicated to me that the access gate(s) were defectively designed and further indicated that the access gate(s) would fall off its rails.[3]

We conclude that this summary judgment evidence raises an issue of material fact with regard to Coonly's claim under the DTPA.[4]

Gables argues that Coonly's affidavit should not be considered as summary judgment evidence because it is a "sham" affidavit that contradicts his earlier deposition testimony. *See Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin 2001, no pet.) (explaining that an individual cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment because such an affidavit presents no more than a "sham"

---

[3] Gables objected to these statements being considered as summary judgment evidence. It argued that the first statement was not credible and not susceptible to being readily controvertible. It argued that the second, third, and fourth statements were inadmissible hearsay and not within the affiant's personal knowledge. The trial court overruled Gables's objections. We find no error by the trial court.

[4] Gables also argues that this evidence should not be considered because it was untimely filed. However, Coonly filed a motion for leave to late file evidence supporting his response to Gables's motion for summary judgment on his DTPA claims. The trial court implicitly granted Coonly leave when it overruled Gables's objections to the evidence.

fact issue). However, in reviewing both Coonly's affidavit and his deposition testimony, we find no contradiction between the two. In his deposition testimony, Coonly testifies about representations regarding security made when he first moved into the apartment (i.e., the representations by the previous owner). Despite Gables's attempts to limit Coonly's testimony to representations made during that time period, Coonly did not testify so narrowly:

> Q:      Okay. And I am not trying to put words in your mouth here, but to the best of your recollection and understanding, you had the communications with personnel connected with the apartments when you first leased there, so Documents 1, 2, and 3; your locater document, your application, and your first lease. Do you recall there being discussions of security then but not after that? Am I to understand that to be –
>
> A:      *Well, other than complaining about the gate, I don't remember anything in particular, no.*

(emphasis added). Thus, we do not interpret the deposition testimony attached by Gables to directly contradict Coonly's affidavit and find no error by the trial court in overruling Gables's objection.

## CROSS-ISSUES

Gables brings a cross-issue that it was entitled to attorney's fees under the DTPA because Coonly brought his DTPA claim in bad faith. Having reversed the trial court's summary judgment on Coonly's DTPA claim, we need not reach this issue.

Gables also brings a cross-issue arguing that the trial court should have awarded it attorney's fees under paragraph 32 of the Lease, which is titled "DEFAULT BY RESIDENT." The "other remedies" provision of paragraph 32, which is relied upon by Gables, states the following:

> **Other remedies.** If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless governmental regulations on submetering or utility proration provide otherwise. We may report unpaid amount to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in

addition to other sums due. Upon your default, we have all other legal remedies, including lease contract termination and statutory lockout under Section 92.0081 of the Property Code. Unless a party is seeking exemplary, punitive, sentimental, or personal injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from the due date, compounded annually. You must pay all collection agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

Paragraph 32 and its "other remedies" provision clearly relate to when a tenant is in default and has no applicability to this lawsuit. Thus, we find no error by the trial court in failing to award attorney's fees.

## CONCLUSION

Because Coonly raised a material issue of fact with respect to his claim under the DTPA, we reverse the trial court's judgment with respect to Coonly's DTPA claim and remand the cause for further proceedings. We affirm the trial court's summary judgment with respect to Coonly's claims of negligence and premises liability.

Karen Angelini, Justice