In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00030-CV


______________________________




GOOSE CREEK CONSOLIDATED


INDEPENDENT SCHOOL DISTRICT OF CHAMBERS AND

HARRIS COUNTIES, TEXAS, Appellant


V.



JARRAR'S PLUMBING, INC., Appellee




 


On Appeal from the 189th Judicial District Court


Harris County, Texas


Trial Court No. 97-44388-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Both the plaintiff, Goose Creek Consolidated Independent School District of Chambers and
Harris Counties, Texas, and the defendant, Jarrar's Plumbing, Inc., appeal the trial court's judgment
regarding claims for injuries Goose Creek sustained arising out of the work Jarrar's Plumbing
performed as a subcontractor in constructing three elementary schools. 

 Goose Creek contends the trial court erred by rendering partial summary judgment in favor
of Jarrar's Plumbing. Goose Creek further contends the court erred by placing the burden of
allocating the settlement damages on Goose Creek instead of on Jarrar's Plumbing before applying
the credit to the jury's verdict, by refusing to consider Goose Creek's extrinsic evidence on that issue,
or by failing to find that Goose Creek met the burden to establish that none of the settlement funds
were attributable to common damages for which appellee would be jointly responsible, regardless
of who had the burden of allocation, and by crediting the settlement funds received in compensation
for separate damages against the jury's verdict, and by rendering a take-nothing judgment.

 Jarrar's Plumbing contends the court erred in denying Jarrar's Plumbing's Motion for
Judgment Notwithstanding the Verdict. Jarrar's Plumbing also contends that the evidence to support
loss-of-use damages was legally and factually insufficient and that the jury question submitted on
loss-of-use damages was improper and an incorrect statement of the law. 

 Goose Creek contracted with Lee Lewis Construction (Lewis), as a general contractor, to
furnish all necessary labor and materials for construction of three elementary schools. Lewis entered
into a contract with a subcontractor, Jarrar's Plumbing, to perform the plumbing work at the schools. 
The schools were occupied when they were substantially complete on August 24, 1992, and classes
began that September. Shortly after occupancy of the buildings, numerous defects were discovered,
including a faulty sewer line and other plumbing problems. 

 Five years later, on August 25, 1997, Goose Creek filed suit against the architects and the
general contractor. Lewis then filed third-party actions against other parties that participated in the
design or installation of various defective systems, including Jarrar's Plumbing. Lewis's third-party
action against Jarrar's Plumbing was filed on May 26, 1998, and was based on breach of contract,
breach of warranty, and negligence. Goose Creek brought claims directly against Jarrar's Plumbing
in Goose Creek's fourth amended petition filed on August 2, 1999. After Goose Creek executed a
Release of the General Contractor and all subcontractors except Jarrar's Plumbing, Goose Creek's
direct claims against Jarrar's Plumbing were severed into cause number 97-44388B, and Goose
Creek filed its fifth amended petition on January 24, 2000, alleging negligence and breach of
warranty claims solely against Jarrar's Plumbing for the plumbing defects. After receiving the
assignment of claims from the general contractor on January 31, 2000, Goose Creek filed its sixth
amended petition asserting the assigned breach of contract and breach of express and implied
warranty claims against Jarrar's Plumbing in addition to the direct claims already asserted.

 The trial court granted summary judgment dismissing Goose Creek's direct claims for breach
of the warranty of workmanlike performance and the assigned negligence and contract claims, the
latter as barred by the statute of limitations. Goose Creek continued to trial on its direct claim of
negligence. The jury found Jarrar's Plumbing was negligent and awarded damages for the cost of
repairs and loss of use.

The Trial Court's Granting of Partial Summary Judgment

 To prevail on a motion for summary judgment, a movant must establish that there is no
genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates
at least one element of each of the plaintiff's theories of recovery or pleads and conclusively
establishes each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex. 1997); Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex. 1993). Goose Creek does not
contend that a question of material fact exists. The question raised here is how the statute of
limitations applies, which is a matter of law we review de novo. 

 Goose Creek appeals the summary judgment regarding the actions for negligence, breach of
contract, and breach of warranty that Lewis assigned to Goose Creek, arguing the assigned causes
of action were not subject to the two- and four-year statutes of limitations because they were raised
as third-party actions to Goose Creek's original claim and therefore acquire Goose Creek's statute
of limitations.

 Under Tex. R. Civ. P. 38(a), a defendant may bring a third-party petition to join a party who
may be liable to the defendant or to the plaintiff for all or part of the plaintiff's claims against the
defendant. A third-party action is not an independent cause of action, but is derivative of the
plaintiff's claim against the responsible third party. Eslon Thermoplastics v. Dynamic Sys., Inc., 49
S.W.3d 891, 902 (Tex. App.-Austin 2001, no pet. h.) (citing Shoemake v. Fogel, Ltd., 826 S.W.2d
933, 935 (Tex. 1992)). As such, an action for indemnification or contribution does not accrue for
limitations purposes until a plaintiff recovers damages or settles its suit against a defendant. City
of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518, 520 (1904); see also Ingersoll-Rand Co. v.
Valero Energy Corp., 997 S.W.2d 203, 211 (Tex. 1999); Conroe Truck & Tractor, Inc. v. Childs
Truck Equip., 723 S.W.2d 207, 208-09 (Tex. App.-Beaumont 1986, writ ref'd n.r.e.). After the
defendant has joined the third party, the third party is subject to such other same transaction claims
as may be brought by the parties. Tex. Civ. Prac. & Rem. Code Ann. § 33.004 (Vernon 1997),
regarding joinder of responsible third parties, does not alter the defendant's statute of limitations
regarding same transaction claims. 

 Lewis's actions for negligence and breach of contract and warranty against Jarrar's Plumbing
were not derivative of Goose Creek's possible claims against Jarrar's Plumbing because Goose Creek
could not have sued Jarrar's Plumbing directly on those claims. Those claims could only have been
same transaction claims brought against a third-party defendant. Although Lewis's claim for
contribution based on any claim Goose Creek would have against Jarrar's Plumbing would not have
accrued until Goose Creek recovered damages or settled with Lewis, Lewis's independent actions
of negligence and breach of contract and warranty accrued under the general rule. Goose Creek, in
its brief, does not argue any recognized exception to the general rule. 

 Breaches of contract and breaches of warranty are governed by the four-year statute of
limitations contained in Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon Supp. 2002). The
statute begins to run from the date of the contract breach. Harrison v. Bass Enter. Prod. Co., 888
S.W.2d 532, 537 (Tex. App.-Corpus Christi 1994, no writ). Actions in negligence are governed by
the two-year statute of limitations contained in Tex. Civ. Prac. & Rem. Code Ann. § 16.003
(Vernon Supp. 2002). The cause of action accrues when the negligent act is committed. See
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998). Tex.
Civ. Prac. & Rem. Code Ann. § 16.061 (Vernon Supp. 2002) provides that a school district's right
of action is not barred by Tex. Civ. Prac. & Rem. Code Ann. §§ 16.001-16.004 (Vernon Supp.
2002). Therefore, Goose Creek's actions against Lewis were not bound by the two- and four-year
periods of limitations, and Goose Creek was able to properly file the claims outside that time. 

 The facts regarding the date of accrual and filing of claims were undisputed. The general
statutes of limitations had run on Lewis's claims against Jarrar's Plumbing before Lewis filed the
third-party petition in 1998. Nothing in the statutes regarding third-party claims extends the
applicable limitations periods for same transaction claims brought against third-party defendants. 
Therefore, Lewis's claims against Jarrar's Plumbing were barred by the statute of limitations when
Lewis assigned the claims to Goose Creek. Because an assignee stands in the shoes of the assignor,
Goose Creek was subject to the statute of limitations as it applied to Lewis's independent actions for
breach and negligence, and was thus barred by the statute of limitations from bringing such actions. 
See Cadle Co. v. Henderson, 982 S.W.2d 543, 545 (Tex. App.-San Antonio 1998, no pet.). This
point of error is overruled. 

The Trial Court's Denial of Judgment Notwithstanding the Verdict 

 Jarrar's Plumbing contends the trial court erred in denying its Motion for a Judgment
Notwithstanding the Verdict regarding Goose Creek's direct action for negligence against Jarrar's
Plumbing. Jarrar's Plumbing argues that as a matter of law, there was no evidence that Jarrar's
Plumbing owed a duty to Goose Creek and that no cause of action was available under the
circumstances of the case regarding Jarrar's Plumbing's relationship to Goose Creek. A motion for
judgment notwithstanding the verdict be granted when (1) the evidence is conclusive and one party
is entitled to recover as a matter of law, or (2) a legal principle precludes recovery. Mancorp, Inc.
v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). We review the denial of the motion for judgment
notwithstanding the verdict under the legal sufficiency standard. See Brown v. Bank of Galveston
Nat'l Ass'n, 963 S.W.2d 511, 513 (Tex. 1998).

 The fact that an act is induced by and done pursuant to a contract does not shield it from
regular tort liability. Thomson v. Espey Huston & Assoc., 899 S.W.2d 415, 420 (Tex. App.-Austin
1995, no writ). One who undertakes to perform a contract assumes a duty to all persons to take
reasonable care not to injure them or their property in the performance of that contract, and one who
is not privy to the contract may assert a claim for negligence for a breach of that duty. Thomson, 899
S.W.2d at 421 (citing Southwestern Bell Tel. Co. v. Delanney, 809 S.W.2d 493, 494 (Tex. 1991) (op.
corrected at 34 Tex. Sup. Ct. J. 749). The court in Thomson found that absent clear evidence to the
contrary, a property owner is not a third-party beneficiary to a contract between a contractor and a
subcontractor and therefore cannot sue on the contract, but that the property owner may assert a
claim for negligence against a subcontractor based on the subcontractor's performance under the
contract where the cause of action is independent of the duties imposed by the contract. Thomson,
899 S.W.2d at 421-22. 

 Because a party's acts may breach duties in tort or contract alone or simultaneously in both,
to determine if a cause of action is independent of the duties imposed by the contract, it is helpful
to consider the nature of the injuries alleged. Id. at 420. If the injury is only economic loss to the
subject matter of the contract itself, the action will only sound in contract. Jim Walter Homes, Inc.
v. Reed, 711 S.W.2d 617, 618 (Tex. 1986) (buyer's action that house received was not as represented
could only be brought under contract, not negligence); see Entergy Gulf States, Inc. v. Akrotex, Inc.,
40 S.W.3d 201, 205-06 (Tex. App.-Beaumont 2001, no pet.). "Economic loss has been defined as
'damages for inadequate value, costs of repair and replacement of the defective product, or
consequent loss of profits--without any claim of personal injury or damage to other property." Bass
v. City of Dallas, 34 S.W.3d 1, 9 (Tex. App.-Amarillo 2000, no pet. h.) (quoting Thomson, 899
S.W.2d at 421). 

 The loss of use of property has been characterized as an injury to property or real estate. See
Vestal v. Gulf Oil Corp., 149 Tex. 487, 235 S.W.2d 440 (1951); Neuhoff Bros. Packers, Inc. v.
Brooks, 410 S.W.2d 298, 299-300 (Tex. Civ. App.-Waco 1966, no writ). To avoid the unending
reach of pure economic loss in a professional or commercial context, loss of use is only recoverable
in tort when the loss is accompanied by a claim for either personal injury or damage to the property
of the one claiming the loss of use. See Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,
29 S.W.3d 282, 289 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (loss of use was pure economic
damage to third party when damage was to property of another). 

 It is not disputed there was no contract between Jarrar's Plumbing and Goose Creek, and there
is no contention Goose Creek was made a third-party beneficiary to the contract that did exist
between Jarrar's Plumbing and Lewis. Although Goose Creek could not raise a claim based on the
duties imposed on Jarrar's Plumbing under that contract, Goose Creek could assert a claim against
Jarrar's Plumbing based on a breach of Jarrar's Plumbing's duty to all persons to use reasonable care
not to injure persons or property in the performance of the contract. 

 The injury that Goose Creek alleged was the invasion of raw sewage and sewer gas into the
school buildings, which Goose Creek alleged caused portions of the buildings to be unusable at
times. Goose Creek contends Jarrar's Plumbing's failure to use reasonable care in installing the
plumbing system directly and proximately caused these injuries. Goose Creek alleged Jarrar's
Plumbing failed to use reasonable care by failing to comply with all applicable plumbing codes, by
failing to install all necessary trap primers and sealing the ones that were installed with pipe dope
so that they did not function, by failing to install any vacuum breakers, by allowing uncapped pipes
connected to the sewer systems to be sealed into the walls where they vented sewer gas into the
school buildings, and by installing the sewer lines in such a manner that they were obstructed and
caused raw sewage to back up into the schools' cafeterias, restrooms, mechanical rooms, and other
areas with floor drains. 

 The acts Goose Creek alleged may also have breached Jarrar's Plumbing's contract with
Lewis. However, the injury Goose Creek alleged, the invasion of sewage and sewer gas into the
school buildings, constitutes an injury to property that was not the subject matter of the contract, that
portion of the contract Goose Creek had with Lewis for which Lewis contracted with Jarrar's
Plumbing, namely the plumbing. Therefore, the injury alleged did not constitute pure economic loss
for which Goose Creek could recover only in contract. 

 Although the remedy Goose Creek sought for the alleged injury included the cost of repairing
and replacing the plumbing, which may be pure economic loss not recoverable under tort, Jarrar's
Plumbing does not raise on appeal the appropriateness of awarding such damages. We review only
the issue that was raised regarding the denial of the Motion for Judgment Notwithstanding the
Verdict, whether Jarrar's Plumbing owed a tort duty to Goose Creek for the alleged injury. Jarrar's
Plumbing owed an independent tort duty to use reasonable care in the performance of the contract
to install the plumbing so as not to injure persons or property, and Goose Creek alleged that such
injury to property was caused by the failure to use such reasonable care. Therefore, Goose Creek
properly maintained a tort action for negligence against Jarrar's Plumbing, and the trial court did not
err in allowing such action to be maintained. This point of error is overruled. 

Sufficiency of Evidence Supporting Loss of Use

 Jarrar's Plumbing argues the evidence to support loss of use damages was legally and
factually insufficient. Jarrar's Plumbing contends first that the evidence was legally and factually 
insufficient to show that Goose Creek had a loss of use for which Goose Creek should be
compensated because there was no actual, physical deprivation of property as the schools were in
continuous use. Jarrar's Plumbing's second contention is the evidence was legally and factually
insufficient to support the amount of damages awarded for any loss of use Goose Creek may have
suffered because there was no evidence of actual pecuniary loss and the evidence of loss that was
introduced was too speculative to support the jury's findings.

 When deciding a no-evidence point, in determining whether there is no evidence of probative
force to support a jury's finding, we must consider all of the evidence in the record in the light most
favorable to the party in whose favor the verdict has been rendered, and we must apply every
reasonable inference that could be made from the evidence in that party's favor. Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). In this review, we disregard all evidence
and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); 
Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). If we find more than a scintilla
of evidence, the evidence supporting the finding, as a whole, rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Crye, 907 S.W.2d at 499. We will
test the factual sufficiency of that evidence by examining the entire record to determine whether the
finding is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong
and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). If we find the evidence insufficient,
we must clearly state why the jury's finding is factually insufficient or is so against the great weight
and preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986). 

 Jarrar's Plumbing's first argument implies that in order to have a compensable claim for loss
of use, the owner must be physically unable to use the property for any purpose. There is no
requirement that the property be unusable for all purposes in order to recover loss of use. See Vestal,
235 S.W.2d 440. The usable value of property should be determined according to the existing use
of the property and not what the value might have been had it been put to different uses. See Shell
Petroleum Corp. v. Clement, 102 S.W.2d 289, 290 (Tex. Civ. App.-Beaumont 1937, no writ);
Montgomery v. Gallas, 225 S.W. 557, 560 (Tex. Civ. App.-San Antonio 1920, no writ). In fact, loss
of use cannot be recovered for the loss of use for a particular purpose where it appears the plaintiff
did not intend to use the property for that purpose. Montgomery, 225 S.W. at 560. Therefore, even
if a plaintiff is not physically deprived of the property, if the injury causes the property to be unfit
for the purpose for which the plaintiff had used or had intended to use it, loss of use may be an
available remedy. The plaintiff is not required to lose the use of the entire property if the portion of
the property injured had a valuable use. See Lone Star Dev. Corp. v. Reilly, 656 S.W.2d 521, 525-26
(Tex. App.-Dallas 1983, writ ref'd n.r.e.) (building built over boundary line). Likewise, the plaintiff
is not required to lose all use of the property; it is enough if the value of the use is reduced by the
injury.

 Where the injury to the property is repairable, it is temporary, and the plaintiff may recover
damages for loss of use of the property for the period the plaintiff was deprived of the use of the
property. Luna v. N. Star Dodge Sales, Inc., 667 S.W.2d 115, 119 (Tex. 1984); Pasadena State Bank
v. Isaac, 149 Tex. 47, 228 S.W.2d 127, 129 (1950); Merrill v Tropoli, 414 S.W.2d 474 (Tex. Civ.
App.-Waco 1967, no writ). The plaintiff's recovery for loss of use is limited to the time reasonably
required to repair the property. McCullough-Baroid Petroleum Serv. NL Indus. v. Sexton, 618
S.W.2d 119, 120 (Tex. Civ. App.-Corpus Christi 1981, writ ref'd n.r.e.). However, the plaintiff's
inability to have the property fixed for financial or other reasons will be taken into account when
determining such reasonableness. Mondragon v. Austin, 954 S.W.2d 191, 194 (Tex. App.-Austin
1997, pet. denied). 

 Additionally, the plaintiff may only recover for such loss of use if the reasonable value of the
use can be established with fair certainty. Davis v. Mrs. Baird's Bakery, 30 S.W.2d 809, 810 (Tex.
Civ. App.-Fort Worth 1930, no writ). Absolute certainty is not required, as latitude is allowed in
determining damages where there is no precise measurement. Texas Tool Traders, Inc. v. Mosley
Mach. Co., 422 S.W.2d 229, 231 (Tex. Civ. App.-Waco 1967, no writ). The usual measure of
damages for loss of use of injured property is the reasonable cost of renting a replacement, although
the plaintiff need not actually rent a substitute or show any amounts actually expended during the
period of loss in order to recover. Luna, 667 S.W.2d at 119; Elias v. Mr. Yamaha, Inc., 33 S.W.3d
54, 61 (Tex. App.-El Paso 2000, no pet.). Where property is not rentable, the plaintiff may resort
to proving the actual worth of use. Gray County Gas Co. v. Oldham, 238 S.W.2d 596, 599 (Tex.
Civ. App.-Amarillo 1951, no writ). 

 A review of the record revealed there was testimony that portions of the school buildings
were not fit to be used for their intended purposes during the times when the raw sewage and sewer
gas were present in the areas. The principals testified the purpose of the schools and their intended
use was to provide a state-of-the-art quality education for children. They all agreed the presence of
the raw sewage and sewer gas in the schools disrupted the learning process and made the schools
unsuitable as a teaching environment. The principals also testified that on days when the gas was
especially strong, such as when teachers became nauseated or when students complained, classes
would be relocated on a moment's notice, losing the use of the visual aids and other supplies set up
in the classrooms, and the classes would be moved to the library, auditorium, gymnasium, other open
or common areas, or other classrooms, filling the other classrooms to double capacity. Larry Topfer,
the principal at Highlands Elementary School, testified that on days when the entire school was
affected, the students would be taken outside while the maintenance department tended to the
problem. He also testified that raw sewage would frequently back up into the restrooms and
anywhere there was a floor drain and that on a number of occasions, the school's cafeteria had to be
shut down due to raw sewage seeping up through the floor drains in the food preparation area. On
those occasions, the school had to bring in pre-prepared food from another facility.

 Based on the record, there was more than a scintilla of evidence supporting Goose Creek's
claim for loss of use of portions of the school buildings for the purpose of educating children due
to the presence of sewer gas and raw sewage. 

 Having found the evidence legally sufficient to support the jury's finding of loss of use, we
evaluate the factual sufficiency of the evidence. In addition to the evidence mentioned above, there
was testimony from Dianna Maldonado Cox, the principal at DeZavala Elementary School, that the
children received a good education despite the problems with the raw sewage and sewer gas. Cox
testified no instructional time was lost except the time required to move the students from one
location to another. Topfer testified no school days had been canceled due to the sewer problems. 
Kay Hurzeler, the former principal of Harlem Elementary School, testified the Harris County air
quality inspectors had determined the school was safe for children and habitable. She agreed the
building had been occupied since the school opened in 1992. 

 This testimony demonstrates that the principals were able to make some use of at least parts
of the school buildings throughout the time of the infiltration of sewage and sewer gas and were able
to provide a certain level of education to their students. Because it is not necessary that the use of
the entire property be lost or that the property be unusable for all purposes, the jury's finding that
there was a loss of use was not so contrary to the overwhelming weight of the evidence that it is
clearly wrong and unjust. 

 We now turn to the issue of whether there was sufficient evidence to support the jury's
monetary award for the loss of use. Looking at the evidence supporting the award, we determine if
it established with fair certainty the reasonable value of the lost use. Although there was no evidence
of the schools expending money to rent alternative facilities in which to hold classes, there was
testimony regarding how much rent would have been for each of the schools for the days the school
was not usable. It is unclear on what that number was based or how it related to the value lost
because the buildings, or at least parts of them, were used on those days and at least some
educational benefit was obtained from such use. Due to the nature of the facility, as an institution
of education, a reasonable rental value may be difficult to assess. Where the property is not rentable,
the plaintiff may resort to proving actual worth of use. Gray County Gas Co., 238 S.W.2d at 599. 
Latitude is allowed in determining damages where there is no precise measurement. See Texas Tool
Traders, Inc., 422 S.W.2d at 231.

 Goose Creek provided an alternative formulation of the value of lost use based on diminution
of value. Goose Creek did not attempt to determine the diminished market value of the buildings,
but used the original cost of the buildings and the straight-line value of the buildings over their
expected life span. The principals produced estimates for each year of the percentage of the time that
raw sewage and sewer gas were in their buildings and the percentage of the school that was affected
by the raw sewage and sewer gas. By multiplying the yearly percentages together, they arrived at an
overall percentage of time and area affected for each of the schools for the eight years. The straight-line value of the schools per year was then multiplied by the final percentages arrived at for each
school. Adding the results together, the principal value for the loss of use was estimated at
$678,570. Because the school paid interest on the bond money over the years, increasing the actual
cost of the buildings, including a percentage of the yearly interest, the value for the loss of use was
estimated to be in excess of two million dollars. Jerry Roy, the superintendent of Goose Creek,
testified this was a reasonable number, although there were factors that were difficult to measure in
this situation. 

 Although the diminished value of the property is the measure of damages for permanent, not
temporary, injury to property, it encompasses the value of the loss of use. See Vestal, 235 S.W.2d
at 442. A modified diminished-value calculation is appropriate to quantify the value of the loss of
use in this situation. 

 Because the basis for the estimated percentages was how often the gas or sewage was present
and in how much of the building, and did not quantify the effect of that presence in terms of the
number of rooms evacuated or their capacities doubled, up as opposed to just distracted, this
calculation provided the jury with only the broadest sense of loss of use. Terms such as "frequently"
and "occasionally" were used to describe when the presence was so strong as to necessitate complete
loss of use of certain areas of the building. In using the broadest estimate of the time and areas
affected, the calculation does not take into account that some use was made of the classrooms that
were not moved and even in those that were filled to double capacity because as Cox's testimony
indicates, the children still received a good education, even if it was not the quality education that
was intended. Understandably, there was no attempt to separately quantify the lost value of the
reduced quality of education to the students. 

 The evidence provided attempted to quantify the loss of valuable use by providing estimates
based on objective facts, figures, and data, from which some value can be ascertained, which is the
minimum required to show the loss with reasonable certainty. See Holt Atherton Indus. v. Heine,
835 S.W.2d 80, 84 (Tex. 1992) (regarding lost profits). The calculations presented by Goose Creek
provided one basis on which the jury could award an amount for loss of use. Testimony provided
information on which to evaluate the proposed calculation, and the jury could have altered the
calculation it if it had disagreed that it was a reasonable estimate of the lost use. The evidence
provided more than speculation, even if it did not provide the jury with specific details about the
degree of presence in the affected areas. This point of error is overruled. 

The Jury Charge

 Jarrar's Plumbing contends that Question 3b of the jury charge improperly asked the jury to
consider the reasonable value for the loss of the schools as educational and instructional facilities
and did not limit the jury's consideration to the appropriate time, which Jarrar's Plumbing argues is
only while repairs were being made. Rule 278 requires the trial court to submit instructions and
definitions to the jury as are necessary to enable the jury to render a verdict. See Tex. R. Civ. P. 278; 
Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). The standard of review for alleged jury charge
error is abuse of discretion. See Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.
1990). The trial court has broad discretion in submitting the jury charge, and it abuses that discretion
only when it acts without reference to any guiding rules or principles. See id.

 Question 3b read 

 Answer in dollars and cents for damages, if any, for each of the following: 


 . . . .

 

 Loss of use of schools-


 Consider the reasonable value of loss of use of Dezavala, Harlem and
Highlands Elementary Schools as educational and instructional facilities . . . . 


As mentioned above, the existence and value of loss of use must be considered in the context of the
actual or intended use of the property. The evidence was uncontested that the school buildings were
intended as educational and instructional facilities; therefore, it was not improper to instruct the jury
to consider the loss of use of the school buildings in that context. 

 Jarrar's Plumbing is correct that there is a limit to the plaintiff's recovery for loss of use. This
limitation has been described as the time reasonably required to repair the property. See Sexton, 618
S.W.2d 119. However, because the defendant takes its victim as is, where the plaintiff is unable to
have the property fixed for financial or other reasons, the limitation is not the time reasonably
required for the repairs to be done, but the time reasonably required for the plaintiff to be able to
have the repairs done. See Mondragon, 954 S.W.2d at 194. This balances the need to compensate
the plaintiff for the actual loss caused by the defendant and the requirement that the plaintiff mitigate
the damages. The instruction did not limit the jury's consideration to the time period reasonably
required for Goose Creek to have had the plumbing fixed. Therefore, the court erred by submitting
defective instructions. 

 Although a jury question that does not guide the jury to a finding on any proper measure of
damages is fatally defective, Jackson v. Fontaine's Clinics, Inc., 499 S.W.2d 87, 90 (Tex. 1973);
Texas Commerce Bank Reagan v. Lebco Constructors, Inc., 865 S.W.2d 68, 75 (Tex. App.-Corpus
Christi 1993, writ denied), where the instruction is merely defective in stating the proper measure
of damages, the error is subject to harmless error review. See Tex. Power & Light Co. v. Barnhill,
639 S.W.2d 331, 335 (Tex. App.-Texarkana 1982, writ ref'd n.r.e.). In this case, the instructions did
guide the jury to a finding on a proper measure of damages, but the instructions were defective in
that they failed to instruct the jury to consider only the time period of loss reasonably required for
Goose Creek to have the repairs completed. 

 After determining that error exists, we then consider the pleadings, the evidence presented
at trial, and the charge in its entirety in determining whether the error merits reversal. Island
Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). Error in
the charge is reversible only if harmful, that is, if it caused or was reasonably calculated to cause, and
probably did cause, the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); Island
Recreational Dev. Corp., 710 S.W.2d at 555. 

 There was evidence at trial that Goose Creek had obtained estimates from a plumbing
company regarding the repairs required to stop the infiltration of sewage and sewer gas into the
schools. Allen Penn testified to the cost of the repairs that had already been made and of those that
would need to be made to bring the system into compliance with the construction plans. He testified
that a reasonable estimate of time required to complete the repairs would be 485 crew hours. He also
testified his company would have been able to make those repairs at any time. Therefore, there was
evidence in the record on which the jury could base a determination of the reasonable time required
to complete the necessary repairs to end the continued loss of use. 

 There was also testimony that Goose Creek had built the schools with money raised by
passing a bond issue and that after the new schools were opened, the problems with the construction 
undermined the school district's credibility regarding the use of taxpayer money. Goose Creek
proposed a bond issue in 1994 which Jerry Roy, the superintendent, testified had failed because of
the lack of credibility. A bond was approved in 1999, apparently for construction of other new
schools. Roy testified that he agreed conceptually that the school district or board could have
obtained the money to have the necessary repairs done at any time during the past eight years, but
that he was not sure. 

 The jury awarded $105,000 for loss of use under Question 3b. This amount was less than
both the total estimates, including interest, of over two million dollars, and the total principal
estimates of $678,570 introduced by Goose Creek. This amount was also less than the figures
provided by Goose Creek for the rental rates of the three schools for the affected time, a total of
$4,779,800. There are no indications as to how the jury determined the amount of the award. The
jury may have considered the length of time reasonably required for Goose Creek to make the repairs
necessary to end the loss of use, but without being instructed to do so. This is unlikely. Given that
the repairs had not been made as of the time of trial, if the jury believed Goose Creek would have
been able to have the repairs done at any time, the difference between the reasonable time for repairs,
485 crew hours, and the length of time that use was actually lost, eight years, was significant, and
the failure to include in the jury instructions any limitation based on the reasonable time required for
the plaintiff to be able to have the repairs done would have caused the rendition of an improper
judgment. Thus, the error would have been harmful. However, because the settlement credit was
in great excess of the judgment against Jarrar's Plumbing and the correction of the error would have
resulted in the same or a decreased award for loss of use, the error was not harmful. In other words,
the error did not harm Jarrar's Plumbing because the judgment would be a take-nothing judgment
whether the instruction had been correct or not. Therefore, this point of error is overruled.



Settlement Credit

 Goose Creek contends the trial court erred by placing the burden of allocating settlement
payments to common and separate damages on Goose Creek instead of on Jarrar's Plumbing, by
failing to consider the extrinsic evidence offered by Goose Creek in an attempt to meet that burden,
by failing to find Goose Creek had met the burden to establish that none of the settlement funds were
attributable to damages common to the settling and nonsettling defendants, and by crediting the
settlement funds received in compensation for separate damages against the jury's verdict and
rendering judgment that Goose Creek take nothing. 

 Historically, credits against the verdict given to nonsettling defendants have been limited to
those damages common to the settling and nonsettling defendants, and the defendant bore the burden
of establishing the proper amount of credit. See Owens-Corning Fiberglas Corp. v. Schmidt, 935
S.W.2d 520 (Tex. App.-Beaumont 1996, writ denied); Paschall v. Peevey, 813 S.W.2d 710 (Tex.
App.-Austin 1991, writ denied); Hampton v. State Farm Mut. Auto. Ins. Co., 778 S.W.2d 476, 479
(Tex. App.-Corpus Christi 1989, no writ) (offset is affirmative defense requiring the defendant's
burden to plead and prove); Providence Hosp. v. Truly, 611 S.W.2d 127, 136-37 (Tex. Civ.
App.-Waco 1980, writ dism'd); Hill v. Budget Fin. & Thrift Co., 383 S.W.2d 79, 82-83 (Tex. Civ.
App.-Dallas 1964, no writ). 

 However, in Mobil Oil Corp. v. Ellender, the Texas Supreme Court, following the rationale
of the United States Court of Appeals for the Fifth Circuit in McFarland v. Leyh, 52 F.3d 1330 (5th
Cir. 1995), shifted the burden of proving the allocation of settlement funds to the plaintiff once the
defendant had met the burden of proving the total amount of settlement, because the plaintiff is in
the best position to provide such proof. Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 928 (Tex.
1998). It became the plaintiff's burden to provide a settlement agreement allocating damages. Id. 
Recognizing this was a change in law, the court provided that plaintiffs could use extrinsic evidence
in order to meet the burden of proof if the settlement had been reached before May 8, 1998, because
the plaintiffs would not have had notice of the need to include such allocations within the four
corners of the settlement agreement. Id. Because the rationale of the credit is to prohibit a plaintiff
from receiving double recovery, if the plaintiff could not meet the burden of proof regarding
allocation, then the defendant, having proven the total amount of the settlement, would be entitled
to credit for the entire settlement amount. Id. Although the facts in Ellender were limited to
allocations between actual and punitive damages, the facts in Leyh dealt with allocations between
common and separate damages. See Leyh, 52 F.3d 1330; Ellender, 968 S.W.2d at 928. 

 Goose Creek settled with other defendants between September 2 and December 29, 1999,
for a total of $1,901,000. Jarrar's Plumbing filed an election for a settlement credit and requested
a dollar-for-dollar credit pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b)(1) (Vernon
1997), for all monies paid in settlement to Goose Creek. At trial, the jury found that Goose Creek
had incurred $405,000 related to plumbing damages, seventy percent attributable to Jarrar's
Plumbing.

 Following the verdict, Jarrar's Plumbing filed a Motion for Entry of Judgment requesting the
court apply a credit of $1,901,000 toward the damages found by the jury and enter a take-nothing
judgment in Jarrar's Plumbing's favor. Goose Creek filed its opposition to Jarrar's Plumbing's
Motion for Settlement Credit and its own Motion for Allocation and Entry of Judgment. Goose
Creek requested leave to introduce extrinsic evidence of allocation. The trial court granted leave and
stated the court was allowing the evidence as an offer of proof. The court allowed full examination
of witnesses and allowed both parties to tender evidence. Then the trial court examined the
settlement agreements and found that they expressly included claims relating to the schools'
plumbing systems and that there was no allocation within the agreements stating the amount
allocated for the plumbing problems. The trial court rendered a take-nothing judgment in Jarrar's
Plumbing's favor. 

 Goose Creek argues that because Ellender was decided on facts dealing only with allocations
between actual and punitive damages, the holding was limited to those facts and did not apply to the
allocation of common and separate damages. However, because Leyh dealt with common and
separate damages, it was clear that the court in Ellender, relying on Leyh, intended to adopt that
court's reasoning, which applies equally to all situations in which allocation is necessary in order to
determine the proper amount to credit the nonsettling defendant. There is no indication the court in
Ellender intended to limit the application of the reasoning to actual and punitive allocation. Goose
Creek points to no cases after Ellender in which the courts did not impose the burden of allocation
on the plaintiff after the defendant had met the burden of establishing the total amount of settlement. 
Goose Creek cites two cases that cite Ellender as imposing the burden on the plaintiff regarding
common and separate damages. See Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378 (Tex. 2000);
Burlington N. R.R. Co. v. Gen. Projection Sys., No. 05-97-00425-CV, 2000 Tex. App. LEXIS 5253
(Dallas Aug. 8, 2000, no pet. h.). 

 Additionally, Goose Creek argues that the rationale for shifting the burden does not exist in
the present case because Jarrar's Plumbing was a party to the negotiations. Although Jarrar's
Plumbing may have had more knowledge of the particular allocations and may have been better
situated than another defendant to provide proof of the allocations, because Jarrar's Plumbing was
not a party to the final settlement, Goose Creek was still in a better position to include explicit
statements of allocation in the final settlement agreements. 

 This point of error is overruled. 

 Following its reasoning set forth above, Goose Creek continues to argue that because
Ellender dealt only with the allocation of actual and punitive damages, the plaintiffs did not have
notice they had the burden of providing the allocation between common and separate damages on
the face of the settlement agreement, and Goose Creek, therefore, should have been allowed to prove
the allocation through extrinsic evidence. 

 The two cases to which Goose Creek cited and which were decided after Ellender were
decided after Goose Creek had entered into settlement agreements. In Casteel, the court recognized
the shift in the burden of proof established in Ellender. It did not indicate it was changing the law
by applying the reasoning of Ellender to issues of allocation where it had not previously been
applied. See Casteel, 22 S.W.3d 378. Further, stating that the settlement was entered into before
the Ellender decision was handed down, the court recognized the need to remand the case to allow
the plaintiff to meet the burden of allocation through use of extrinsic evidence. In Burlington
Northern Railroad Company, the court also applied the shift of burden established in Ellender
regarding joint and separate damages. Because the agreement had been entered into before the
Casteel or Ellender decisions had been handed down, the court expressly stated the plaintiff should
be allowed to use extrinsic evidence to prove the allocation. Because they did not have the notice
provided by Ellender when they entered into their agreements, such plaintiffs were allowed to
introduce extrinsic evidence to meet the burden of proving allocation, as Ellender had provided. See
Burlington N. R.R. Co., 2000 Tex. App. LEXIS 5253; Casteel, 22 S.W.3d 378.

 As Goose Creek's settlement agreements were entered into after Ellender, the court was
correct in not considering Goose Creek's extrinsic evidence of allocation. This point of error is
overruled. 

 Goose Creek contends that it met the burden of proof establishing that none of the settlement
amounts were allocated for common damages and that the court erred in failing to find such burden
had been met. We review the court's determination for abuse of discretion. 

 Goose Creek contends none of the monies received in the settlements was intended to
compensate Goose Creek for any problems with the plumbing. All of the evidence to which Goose
Creek refers us, to demonstrate the evidence showed Goose Creek received only assignments, and
not money, for plumbing-related defects, is extrinsic evidence. Because under Ellender, Goose
Creek was not entitled to introduce extrinsic evidence, we cannot review this evidence in
determining whether the trial court abused its discretion. 

 Goose Creek's live pleadings at the time of settlement included allegations against the settling
defendants for plumbing damages and negligence similar to those retained in Goose Creek's
amended pleadings eliminating the settling defendants from the suit and bringing suit directly against
Jarrar's Plumbing. Goose Creek entered into several release agreements, all of which provided for
a release of all claims asserted or which could have been asserted against the defendants. The release
regarding Lewis and named third-party defendants does not contain the amounts of settlement or the
assignments of claims against Jarrar's Plumbing, but incorporates the settlement agreement as
Exhibit A, which was not included in the record. The assignment from Lewis to Goose Creek of all
of its claims against Jarrar's Plumbing, included as an exhibit, states it is given for consideration of
the release as provided pursuant to the settlement agreement. Goose Creek also released Bay, PBK,
PBR, and other architects and engineers. That release contained a paragraph providing that Bay,
PBK, and PBR assign and convey their claims against Jarrar's Plumbing to Goose Creek. No other
releases mentioned any assignments. 

 In denying Goose Creek's motion regarding allocation, the judge stated the plumbing claims
were explicitly mentioned in the releases. The court did not consider the assignment of claims to
be conclusive evidence of allocation. 

 The court did not abuse its discretion in determining that damages for plumbing were
included in the settlements, as the releases covered all claims. Neither did the court abuse its
discretion in determining the settlements did not provide for an allocation of monies to those claims,
as there was no statement the assignments alone were provided in exchange for the release of such
claims. This point of error is overruled.

 Because we find the trial court did not err in failing to find Goose Creek met the burden to
establish that none of the settlement funds was attributable to common damages for which Jarrah's
Plumbing would be jointly responsible, we must find that the court did not err by crediting the
settlement funds received in compensation for separate damages against the jury's verdict and
rendering a take-nothing judgment. Ellender provided that although the defendant is only entitled
to credit for such common damages, the defendant should not be disadvantaged by being unable to
prove such allocation. Ellender, 968 S.W.2d 917. The same reasoning that shifts the burden of
proof to the plaintiff allows that if the plaintiff fails to meet that burden, the defendant will receive
a credit for the entire amount of the settlement that has not been proven to be allocated to separate
damages. Id. This point of error is overruled. 


 The judgment of the trial court is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: February 27, 2002

Date Decided: March 28, 2002


Publish