

## NUMBER 13-10-00441-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

STEPHEN T. LEAS,                                                                        Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE,                          Appellee.

### On appeal from the 332nd District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

This case involves a disciplinary proceeding brought against McAllen lawyer Stephen T. Leas. By four issues, Leas appeals the trial court's judgment that he committed professional misconduct and asserts that: (1) the Texas Rules of Disciplinary Procedure's statute of limitation barred the present action; (2) the evidence

was legally and factually insufficient to support the judgment; (3) the trial court erred when it allowed an expert witness to testify on attorney fees; and (4) the trial court's rendition of judgment was in error. We affirm.

## I. BACKGROUND

In 1996, Leas represented parents and guardians, as next friends, of approximately 667 minors following an explosion at the Union Carbide plant in Port Lavaca, Texas.[1] Leas settled his portion of the case with Union Carbide for $1.725 million ("Union Carbide lawsuit/settlement"). Of the total settlement, $823,452.00 was allocated for clients. Because a vast number of the real parties in interest were minors at the time of settlement, the trial court ordered that the minors' portions of the $823,452.00 be deposited into the registry of the court and further ordered that Leas assume responsibility for the disbursement of those funds. In January 1997, Leas sent a letter to his clients and stated that the minors' settlement funds had been deposited into a single bank account. Leas indicated in his letter that the settlement funds would be delivered within thirty days of each child's eighteenth birthday and directed the parents and guardians to keep his office informed about any address changes.

Between 2006 and 2008, various clients whose children had reached the age of majority unsuccessfully attempted to retrieve disbursements for their children from Leas. In 2008, the Commission for Lawyer Discipline ("the Commission") filed disciplinary proceedings against Leas in Hidalgo County and alleged that he violated Rule 1.14(b) of the Disciplinary Rules. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (West 2005). More specifically, the

---

[1] The underlying lawsuit's judgment was signed November 5, 1996 in Cameron County, Texas.

Commission alleged that Leas failed to timely pay his clients from the Union Carbide lawsuit after some minor real parties in interest reached the age of majority. A jury trial was held in October 2009.

**A.    Trial on the Merits**

The following evidence was presented:

**1.  The Commission's Evidence**

Eight individuals testified for the Commission about Leas's failure to pay the portions of the Union Carbide settlement. The witnesses included three clients, acting as next of friends of the then-minor real parties in interest, and five real parties in interest who were minors at the time of the settlement but had since reached majority age.

Tyrone Carlyle, father and next friend of Danielle Carlyle, testified first. Danielle was a minor at the time of the Union Carbide settlement, and Tyrone testified that shortly after Danielle turned eighteen, he attempted to retrieve her settlement funds from Leas. Tyrone's efforts to reach Leas were unsuccessful, so he engaged the assistance of outside counsel. The trial court admitted a copy of a certified letter dated February 19, 2008 into evidence from attorney Gerald Cornick, on Tyrone's behalf, to Leas inquiring about the situation. Tyrone admitted that the text of the letter incorrectly identified his son, rather than his daughter, who had the issue. Tyrone testified that he brought this error to Cornick's attention, that a corrected letter was sent to Leas, but he did not have a copy of the corrected correspondence.

Tyrone testified that since Danielle turned eighteen, she has yet to receive her $1,177.00 share of the Union Carbide settlement. Danielle also testified that she had

not received any money from the settlement despite repeated efforts to reach Leas after turning eighteen.

The trial court also admitted Leas's March 8, 2008 written response to attorney Cornick, along with an attachment indicating that Tyrone, as next friend of Danielle, was paid Danielle's share in 1997. Leas presented a disbursement-of-funds letter and check dated to Tyrone which purported to bear his signature as an early settlement payment and cashed check to Tyrone as next friend of Danielle. Tyrone testified that the signatures on those documents were not his and that he had not received an early check on daughter's behalf.

Israel Baldera, Tranquilino Ricky Baldera, Jr., and Christopher Baldera are three brothers who were minors at the time of the settlement. All three brothers testified that they have not received any money from the Union Carbide settlement since turning eighteen and that they all relied on their mother to handle their affairs in this case.

During cross-examination, Leas's counsel showed Christopher a cashed check admitted into evidence which purported to bear his mother's signature. At trial, Christopher was uncertain when asked whether the signature on the check was his mother's, but Leas's counsel reminded him that during his deposition, he identified the signature as his mother's. Christopher acknowledged this conflict.

Gloria Baldera, mother and next friend of Israel, Ricky, and Christopher, testified that her sons have not been paid their respective $1,177.00 shares of the Union Carbide settlement, nor was any money received prior to Israel, Rick, or Christopher turning eighteen. On cross-examination, Gloria denied that the signatures were hers on the documents and checks admitted into evidence.

Elisa Garcia, who was twenty at the time of trial, also testified that she had not received money from Leas since turning eighteen. She admitted, however, that most, if not all, dealings with Leas had been through her mother, Christina Garcia. Elisa's mother Christina testified that she requested Elisa's share of the Union Carbide settlement after Elisa turned eighteen, and never requested it at any time before. Christina stated that after Elisa turned eighteen, she attempted numerous times to obtain Elisa's portion of the settlement but was unsuccessful. According to Christina, Elisa has not received her share of the Union Carbide settlement. When asked on cross-examination, Christina denied that she received a check on Elisa's behalf. She also stated that a check purportedly made out to "Cristina J. Garcia" was not hers because her first name is spelled differently, and she does not have a middle initial.

### 2. Leas's Evidence

Leas testified in his own defense that the testimony from the Carlyle, Baldera, and Garcia families was untrue. Leas asserted that the documents bearing each of the parent's signatures were authentic and correct. Leas testified that he asked the trial court to release some of the funds early because some minors reached majority age shortly after the final judgment was signed and clients began calling his office demanding their money. However, Leas testified that the check made out to "Cristina J. Garcia" was separate from a check made out to Christina Garcia because he had two clients with the same name but with different spellings. The trial court then admitted a cashed check purportedly bearing the correct signature of Christina Garcia, as next friend of Elisa. Leas testified that he paid the Carlyles twice, but never received a return check for the error. Finally, Leas indicated that the documents admitted into

5

evidence—including correspondence, release forms, and paid checks—were kept in the scope of his practice and relied upon heavily because his memory could not possibly remember all 667 clients involved in this case.

### 3. Verdict and Judgment

The jury affirmatively found that Leas committed professional misconduct in violation of Disciplinary Rule 1.14(b) for not paying the real parties in interest their portion of the Union Carbide settlement at the time they turned eighteen. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(b). The trial court entered the following judgment:

> It is accordingly, ORDERED, ADJUDGED, and DECREED, that [Leas] be SUSPENDED from the practice of law in the State of Texas, for a period of sixty months, the last fifty-four months of said suspension being probated under the terms and conditions more fully set forth below. The period of active suspension shall be effective at 12:01 a.m. on the 30th day after this judgment has become final or the conclusion of any perfected appeal, and to continue for a period of six months thereafter. It is further ORDERED that this suspension shall be made a matter of public record and shall be published in the Texas Bar Journal as well as a newspaper of general circulation in the county of [Leas's] residence or office.

This appeal followed.

## II. STATUTE OF LIMITATIONS

In his first issue, Leas asserts that the present action was barred under the rules of disciplinary procedure's statute of limitation provision.

### A. Standard of Review

The applicability of a statute of limitations is a question of law, and we review it de novo. *See Delhomme v. Comm'n for Lawyer Discipline*, 113 S.W.3d 616, 619 (Tex. App.—Dallas 2003, no pet.); *Goose Creek Consol. Ind. Sch. Dist. of Chambers and*

*Harris Counties, Tex. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 492 (Tex. App.—Texarkana 2002, pet. denied).

**B.     Discussion**

Leas argues that the allegations brought against him are barred by the rules of disciplinary procedure's four-year statute of limitations because the alleged misconduct took place in late 1996 and early 1997, well before the four-year limitation.    *See* TEX. R. DISCIPLINARY P. 15.06, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A-1 (West 2005) (stating that "[n]o attorney licensed to practice law in Texas may be disciplined for [p]rofessional [m]isconduct occurring more than four years before the time when the allegation of [p]rofessional [m]isconduct is brought to the attention of the Office of Chief Disciplinary Counsel, except in cases in which disbarment or suspension is compulsory").    We disagree.

The key inquiry in this issue is to determine when Leas's alleged misconduct took place.    *See id.*; *Delhomme*, 113 S.W.3d at 619–20.    Here, the jury found that Leas violated Disciplinary Rule 1.14(b) for failing to deliver shares of the Union Carbide settlement upon certain minors reaching the age of majority.    *See* TEX. DISCIPLINARY R. PROF'L CONDUCT   1.14(b).   In this case, the Carlyle, Garcia, and Baldera complainants followed the advice prescribed in a 1997 letter from Leas which instructed them that their individual shares with interest, if any, of the Union Carbide settlement would become available within thirty days of obtaining majority.

Therefore, the respective limitations clock on Leas's alleged misconduct did not begin to run until each respective complainant reached the age of eighteen.   In this case, (1) Danielle Carlyle reached majority on December 15, 2008; (2) Elisa Garcia on

7

July 31, 2007; (3) Ricky Baldera on November 20, 2006; (4) Israel Baldera on February 7, 2008; and (5) Christopher Baldera on December 14, 2008. Accordingly, the respective dates of alleged misconduct made the basis of the disciplinary action were brought to the Commission's attention within the appropriate four-year limitations period. *See* TEX. R. DISCIPLINARY P. 15.06.[2]

Leas's first issue is overruled.

## III. SUFFICIENCY OF THE EVIDENCE

In his second issue, Leas challenges the factual and legal sufficiency of the evidence to support the jury's verdict.

### A. Standard of Review

When reviewing legal sufficiency, we must sustain "no evidence" points only when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; and (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In deciding no evidence points when the evidence offered to prove a vital fact is no more than a mere scintilla, we must view the evidence in the most favorable light in support of the finding and reject evidence and inferences which are to the contrary. *Id.* However, we must not disregard contrary evidence in situations (1), (2), and (4). *Id.*

---

[2] Leas's argument that *Delhomme v. Comm'n for Lawyer Discipline* is similar to this case is misplaced. *Delhomme* involved allegations under Disciplinary Rule 1.14(b) different than those involved in this case. *See* 113 S.W.3d 616, 620 (Tex. App.—Dallas 2003, no pet.) (describing Delhomme's conduct of failing to notify her client that she had received a settlement check, but nonetheless withdrawing her fee).

8

In conducting a factual sufficiency review, we must not merely substitute our judgment for that of the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We must recognize that the jury is the sole judge of credibility of witnesses and the weight to be given to their testimony. *Id.*; *see City of Keller*, 168 S.W.3d at 810. Finally, we must consider and weigh all of the evidence in the case in determining whether the evidence is insufficient or if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (citing *In re King's Estate*, 150 Tex. 662, 665–66 (1951)).

## B. Discussion

The jury in this case affirmatively found that Leas, after receiving settlement funds, failed to promptly deliver the settlement funds to the complainants. Leas challenges whether the evidence supports the finding that he failed to promptly pay his clients their portion of the Union Carbide settlement. It is undisputed that the Carlyle, Garcia, and Baldera complainants were each entitled to a $1,177.00 payout plus interest upon reaching the age of eighteen. However, Leas argues that the evidence shows that the complainants—through their next friends—were paid and that this fact is supported by documents and his testimony.

The record shows that some evidence is in conflict—namely, the testimony from eight witnesses who affirmed that they had not received any funds from the Union Carbide settlement despite Leas's assertions to the contrary and denied that the signatures on the checks and documents offered by Leas's were theirs. When conflicts of evidence exist, it is within the province of the jury to resolve them. *City of Keller*, 168

9

S.W.3d at 820. Moreover, in every circumstance in which reasonable jurors can resolve evidence either way by disregarding the conflicting evidence, we must assume that the jury did so in favor of the verdict. *Id.* at 821. We also recognize that jurors are the sole judges of credibility of witnesses and the weight to give to their testimony. *Id.* at 818–19. A jury may choose to believe one witness and disbelieve another. *Id.*

In this case, the evidence was in conflict—the Commission presented evidence supporting one set of facts and Leas presented evidence supporting another. It is fathomable from our review that a reasonable jury could have resolved the conflicting evidence in Leas's favor, but under *City of Keller*, we must assume that the jury resolved this conflict in favor of the verdict and disregard the conflicting evidence. *Id.* 820–21. The jury acted within its province to resolve these questions of fact in the Commission's favor. *Id.* at 820. Therefore, we conclude that the evidence was legally sufficient to support the verdict. *Id.* at 820–21. Finally, after reviewing and considering all of the evidence in this case, including evidence which is contrary to the verdict, we cannot conclude that the verdict is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Pool*, 715 S.W.2d at 635 (citing *In re King's Estate*, 150 Tex. 662, 664–66 (1951)). Leas's second issue is overruled.

## IV.    EXPERT WITNESS TESTIMONY

In his third issue, Leas contends that the trial court erred in allowing the Commission's trial counsel, Paul Homburg III, to testify as an expert regarding attorney's fees.

10

**A.    Standard of Review**

A trial court has broad discretion to determine admissibility of expert testimony. *Llanes v. Davila*, 133 S.W.3d 635, 638 (Tex. App.—Corpus Christi 2003, pet. denied). Therefore, a reviewing court must reverse only for an abuse of discretion. *Id.* (quoting *Helena Chem. Corp. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001)). An abuse of discretion occurs when a trial court's decision is arbitrary, unreasonable, and without reference to guiding rules and principles. *Llanes*, 133 S.W.3d at 638.

**B.    Discussion**

Leas contends that the trial court erred in not excluding Homburg's testimony because the Commission failed to timely designate him as an expert. We disagree. The record shows that the Commission designated Homburg one year prior to trial in its responses to Leas's request for disclosures. Next, Leas specifically objected to the trial court prior to Homburg's testimony that the Commission failed to produce Homburg's itemized billing statement as well as his current resume. *See* Tex. R. Civ. P. 194.2(4)(A)–(B).[3] Leas argues that these failures resulted in a "trial by ambush."

A party's failure to provide a complete response to a request for disclosure results in the automatic exclusion of the witness's testimony, unless the trial court finds good cause or lack of surprise or prejudice. *See* Tex. R. Civ. P. 193.6(a); *$27,877.00 Current Money of the U.S. v. State*, 331 S.W.3d 110, 120 (Tex. App.—Fort Worth 2010, pet.

---

[3] The pertinent rule provides that any expert employed by the responding party must disclose, when asked by the party propounding discovery:

(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B) the expert's current resume and bibliography.

Tex. R. Civ. P. 194.2(4)(A)(B).

11

denied). A "complete response" is one that is based on all information reasonably available to the responding party or its attorney at the time the response is made. TEX. R. CIV. P. 193.1. In this case, the Commission responded to Leas's request for disclosure with the following response:

> Counsel of record for the Commission, Paul H. Homburg III, may testify solely regarding the amount of attorney fees and expenses incurred in the prosecution of this case for purposes of determining such amounts as part of any sanction levied against [Leas]. Such testimony will be based upon the knowledge, skill, training, education, and experience of the attorney and knowledge regarding the amounts and reasonableness of the expenses and fees incurred in the prosecution of the case. Particularly, the Commission anticipates testimony that the amount of hours expended in prosecution of this case is a reasonable and necessary amount, that $250.00 per hour is a reasonable fee for the hours expended by counsel and that all the expenses incurred were reasonable and necessary to the prosecution of this matter.

At trial, Homburg testified that it was not in the regular course of his business as trial counsel for the Commission to keep hourly records. Homburg further testified that he did not keep an updated resume on file. Homburg asserted that requiring production of documents that were not in existence—such as hourly billings and an updated resume—would require the production of a document that did not exist. *See* TEX. R. CIV. P. 192.3; *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998); *In re Guzman*, 19 S.W.3d 522, 525 (Tex. App.—Corpus Christi 2000, no pet.).

Based on these facts, we conclude that the trial court did not abuse its discretion under Rule 193.6(a). The trial court was within its discretion to find that the Commission's failure to produce Homburg's hourly billings and resume was supported by good cause—that is, the Commission's written response to discovery and Homburg's testimony—or that it did not constitute surprise or prejudice to Leas because the Commission's response provided him with sufficient notice of the substance of

12

Homburg's testimony. *See* TEX. R. CIV. P. 193.6(a); *$27,877.00 Current Money of the U.S.*, 331 S.W.3d at 120 (finding no abuse of discretion for allowing an expert witness to testify—despite a defective disclosure response during written discovery—because the testimony was within the subject matter that the State declared and because the complaining party was not so deprived to prepare for meaningful cross examination). Accordingly, Leas's third issue is overruled.

## V.     PROBATED JUDGMENT

In his fourth issue, Leas contends that the trial court's final judgment is subject to multiple interpretations and should be reformed or remanded back to the trial court for clarification.

### A.     Standard of Review

A judgment should be construed as a whole toward the end of harmonizing and giving effect to all the court has written. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (citing *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)). The entire content of the written instrument and the record should be considered. *Whorton*, 742 S.W.2d at 278.

### B.     Discussion

Giving effect to all the court has written, we conclude that the trial court's final judgment is not subject to multiple interpretations as Leas asserts, but only one clear interpretation.   *See id.*   Our review of the record and the judgment shows that the trial court rendered judgment that:   (1) Leas be suspended from the practice of law in the State of Texas for a total of sixty months;   (2) the suspension be probated the last fifty-four months of the total;   (3) full suspension be ordered for the first six months; and

13

(4) the first six months of active suspension commence at 12:01 a.m. on the thirtieth day after the judgment has become final or the conclusion of any perfected appeal.    The trial court's order indicates that the active suspension—including the fifty-four month probation—was stayed pending appeal.    Accordingly, we overrule Leas's final issue.

## VI.    CONCLUSION

The trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
9th day of August, 2012.