# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00186-CV

**First-Citizens Bank & Trust Company, Appellant**

**v.**

**American Constructors, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-08-002044, HONORABLE SCOTT OZMUN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

First-Citizens Bank ("FCB") appeals a final summary judgment on claims it had asserted against American Constructors, Inc. ("ACI"). FCB had sued ACI to recover amounts that ACI allegedly had paid to one of ACI's subcontractors after the subcontractor had purported to assign its rights to those payments to FCB. The principal issue on appeal is whether FCB presented summary-judgment evidence raising a fact issue as to whether FCB had given ACI notice of the assignment as required by section 9.406 of the business and commerce code. *See* Tex. Bus. & Com. Code Ann. § 9.406(a) (West 2002 & Supp. 2009). We will affirm the judgment.

## BACKGROUND

ACI, an Austin-based construction company, was hired to build an elementary school for the Austin Independent School District. ACI subcontracted with Complete Communications Services, Inc. d/b/a Co Com Cabling Systems ("CoCom") for installation of cabling systems. In

2006, CoCom entered into an "Accounts Receivable Purchase and Security Agreement" with FCB. This agreement contemplated that CoCom would sell and transfer accounts receivable to FCB in exchange for FCB's advancing funds to CoCom. CoCom later purported to sell and assign to FCB its accounts receivable from its work under its subcontract with ACI.

Section 9.406 of the business and commerce code provides:

> (a) [A]n account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.
>
> . . . .
>
> (c) [I]f requested by the account debtor, an assignee shall seasonably furnish reasonable proof that the assignment has been made. Unless the assignee complies, the account debtor may discharge its obligation by paying the assignor, even if the account debtor has received a notification under Subsection (a).

Tex. Bus. & Com. Code Ann. § 9.406(a). On or about August 13, 2007, ACI received a letter from a law firm acting on FCB's behalf advising it that CoCom had assigned to FCB its rights to payment from ACI. The letter advised ACI that any future payments ACI owed to CoCom should be directed to FCB. ACI temporarily withheld funds otherwise due to CoCom while ACI sought to confirm the validity of the assignment from CoCom to FCB. CoCom never provided that confirmation; instead, it filed for bankruptcy on August 24, 2007.

In June 2008, FCB sued ACI alleging that ACI had actually received notice of the assignment in March 2007, yet had continued to make payments directly to CoCom between

2

May 24, 2007 through July 16, 2007. FCB sought recovery of what it alleged was the amount of those payments, as well as attorney's fees. ACI answered and alleged affirmative defenses that included FCB's failure to give notice as required by section 9.406 until August 13, 2007.[1]

ACI subsequently filed a motion for summary judgment relying on both traditional and no-evidence grounds. ACI asserted that FCB had no evidence that it had sent the required authenticated notice of the assignment to ACI prior to August 13, 2007, no evidence that ACI had received any such notice before that date, and no evidence to support any elements of its cause of action that ACI wrongly paid CoCom monies to which FCB was entitled. ACI further asserted that the evidence conclusively established that ACI had not received the required notice of the assignment before August 13, 2007, and that the assignment was barred under CoCom's subcontract with ACI.

In support of its summary-judgment motion, ACI presented evidence that no one with the company had received any written or oral communication from FCB informing it about the assignment until the August 13, 2007 letter. ACI's chief financial officer, Tom Mistler, testified by affidavit that he had investigated and determined, after receiving FCB's August 13, 2007 letter, that ACI had not received any previous written or oral notice of the assignment. He added that if ACI had received notice of the assignment in March 2007, "it would have immediately started

---

[1] ACI also counterclaimed and asserted third-party claims in interpleader with respect to a balance of approximately $90,000 remaining on the CoCom subcontract. Those claims are not at issue on appeal. However, complaining that FCB persisted in bringing this appeal prematurely while the interpleader claims were still pending and the summary judgment was not yet final, ACI moved to dismiss the appeal and for an award of attorney's fees and costs incurred in preparing and prosecuting its motion as sanctions. The jurisdictional defect has since been cured. We overrule ACI's motion.

3

withholding funds otherwise due to CoCom pending confirmation of the validity of the assignment, just as it did when it actually received notice in August 2007."

Mistler also addressed allegations by FCB that it had sent ACI the required written notice by certified mail in March 2007 and received a signed "green card" in return. FCB had attached to its petition a copy of a green card bearing the article number 7006 2760 0002 1426 5501. In the green card's box for "Article Addressed to" is typed "American Constructors Inc." and ACI's address, a suite in an office building located on Austin's MoPac Expressway. A box is also checked indicating that whatever item the green card had accompanied was sent by certified mail. The portion of the green card to be completed on delivery is signed "Amer Cont" as agent for (handwritten) "Amer Const," with a handwritten date of delivery indicated as "3/26/07." Mistler testified that no ACI employee had signed for a certified letter from FCB in March 2007 and that the signature appearing on the aforementioned green card was not that of any ACI employee or agent.

ACI presented similar affidavit testimony from its receptionist, Pamela Danzy. Danzy averred that she is responsible for receiving and opening all mail ACI receives and forwarding it to the appropriate ACI personnel. She explained that when receiving certified mail for ACI, "I sign my signature to the certified mail receipt (also known as the 'green card'), attach the envelope to the letter, and forward it to the appropriate person." Danzy denied that ACI had received any correspondence from FCB regarding CoCom's assignment before August 2007, that she ever received or signed for such a certified letter, that she had ever seen the aforementioned green card before the litigation, or that the green card had ever been received by ACI. She added that "[t]he

4

signature notation of 'Amer Const.' on the 'green card' is not my signature, nor is it signed in accordance with the practice of American Constructors for receipt of certified mail."

Along with Mistler's and Danzy's testimony, ACI presented an affidavit provided by the mail carrier who serves the office building where ACI's offices are located, Mike Botelo. Botelo acknowledged that before the summer of 2007, "my standard delivery practice for delivering certified mail to the businesses within ACI's office building" was to "sign myself all certified mail receipts for the various businesses located in the building and then deliver the mail to the various mailboxes." Botelo admitted that the aforementioned green card "bears my signature."

ACI also challenged whether FCB had evidence that it had sent the required authenticated notice to ACI in March 2007 or that ACI had received it. ACI relied on deposition testimony from Brenda Brown, FCB's portfolio manager for the working capital group. Brown testified that FCB did not have a copy of any signed notice letter purportedly sent to ACI in March 2007 and that FCB does not keep copies of such letters, which are generated by computer. ACI also emphasized the deposition testimony of Becky Brower, an operations supervisor for FCB who oversees two employees in handling the bank's factoring operations. Brower explained that her department's responsibilities included sending notice letters to account debtors whose account creditors had assigned their rights to payment to FCB. Brower explained that FCB kept files on computer for each client and subfiles for each client's account debtors. According to Brower, each day the computer system automatically generates notice letters for each "new" account debtor that had been added that day, and she or her staff prepare envelopes for the letters and certified-mail sender's receipts (the small white document) with corresponding certified-mail return receipts

5

(green cards) to go on the envelopes.  Once the envelopes are mailed, Brower indicated, her department retains the white sender's receipts in a file.  After FCB receives the returned green card from the postal service, Brower explained, it is matched with the corresponding white sender's receipt and placed in the file, and the date of delivery indicated on the green card is entered into the computer system.

Brower indicated that FCB's computer entries concerning ACI were consistent with a notice letter having been generated and sent by certified mail in March 2007.  She added that a green card—the same as that attached to FCB's petition—had been returned and placed in the file and that the article number corresponded to that of the white sender's receipt that had been retained in the file.  Brower also testified concerning a screen print-out from the United States Postal Service website that purported to indicate, based on the article number, that a letter had been delivered in the same Austin, Texas ZIP code where ACI is located on March 26, 2007.  However, Brower made a number of admissions concerning her inability and that of other FCB personnel to testify to any additional facts regarding whether FCB had sent or ACI had received a notice letter in March 2007:

- Brower had no personal knowledge that any notice letter, in any form, was actually sent by anyone at FCB to ACI.  She added that she had no memory of signing such a letter[2] or even seeing one, or of typing an envelope or certified-mail receipt for such a letter, and that she had "no idea" as to anyone who did.  While she insisted that "I know it went," Brower indicated that her belief was based on "the green card I got back."

- FCB does not retain hard copies of the notice letters it generates and sends out.

---

[2]  In fact, Brower indicated that FCB used her stamped signature on such letters.

6

- There was nothing at FCB that could tie the certified-mail receipt number to a particular letter. For example, the text of notice letters are a form and do not include the certified-mail number.

- Neither Brower nor anyone else at FCB knows whether a notice letter or the green card were ever actually delivered to ACI, who signed the green card, whether this person was actually an agent of ACI, and whether the date of delivery was correct. Brower added that the only information on the green card for which FCB personnel would have knowledge was the typewritten address and the indication that certified mail was the method of service. She further admitted that while FCB retained green cards as part of its regular business practices, the recording of the delivery information on the cards was not FCB's activity, but occurred outside the bank and beyond its control or knowledge.

- Brower knew of no one from FCB who had spoken with ACI prior to August 2007.

In response to ACI's summary-judgment motion, FCB presented a copy of Brower's deposition (which, unlike ACI's copy, included as exhibits the green card and white sender's receipt about which she testified), as well as an affidavit from Brower. With Brower's affidavit were exhibits that included the green card, white sender's receipt, USPS website printout, screen prints from FCB's computer system reflecting that a letter was mailed to ACI on March 21, 2007, and what Brower claimed was a "reprint" of the notice letter that FCB had sent to ACI, also dated March 21, 2007. Brower purported to prove up these documents (including "the American Constructors, Inc. green card"), verified that the letter had been sent to ACI, and correlated the certified-mail documents to the "reprinted" letter.

FCB also objected to Botelo's affidavit on the basis that it violated federal regulations that shield postal-service employees from "demands for testimony" in certain legal proceedings. *See* 39 C.F.R. § 265.12 (2009). With this, FCB attempted to present two letters from a USPS paralegal

7

to the effect that the postal service had not authorized Botelo to provide his affidavit nor authorized its use.

FCB argued that Brower's deposition and affidavit raised a fact issue as to whether FCB had sent ACI a notice letter and that her affidavit—or even the green card alone—raised a fact issue as to whether ACI had received the letter. ACI objected to the two postal-service letters as hearsay and to several portions of the Brower affidavit and attachments based on hearsay, lack of personal knowledge, and contradiction with her prior deposition testimony.

Following a hearing, the district court overruled FCB's objection to the Botelo affidavit, sustained ACI's objections to the two letters, and sustained some but not all of ACI's objections to Brower's affidavit and attachments. The court specifically granted ACI's "Traditional Motion for Summary Judgment," but denied additional relief. This appeal followed.

**ANALYSIS**

FCB brings four issues on appeal. In its first issue, FCB complains of the district court's admission of the Botelo affidavit and its exclusion of the two letters. In FCB's second issue, it complains of the district court's rulings excluding portions of Brower's affidavit and attachments. In its fourth issue, FCB contends that regardless of our disposition of its first two issues, the summary-judgment evidence presents a fact issue as to whether ACI received notice of the assignment as required by section 9.406. In its third and remaining issue, FCB challenges whether ACI was entitled to summary judgment on the ground that CoCom was barred by ACI's subcontract from assigning its receivables to FCB.

8

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. In determining whether there is a disputed material fact issue precluding summary judgment, we take as true proof favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubt in favor of the nonmovant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

As a movant seeking summary judgment against claims of a nonmovant based on affirmative defenses, ACI had the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of at least one of those affirmative defenses. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974) (per curiam)). Assuming ACI met this burden, the burden shifted to FCB to file a timely written response presenting grounds for denying summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Grounds that FCB did not expressly present to the trial court by written response cannot be considered as grounds for reversal on appeal. Tex. R. Civ. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. ACI's motion must stand on its own merits, however, and thus FCB is not precluded from contending on appeal that the grounds presented in ACI's motion were legally insufficient to entitle it to summary judgment. *Rhône-Poulenc*, 997 S.W.2d at 223 (citing *Clear Creek Basin*

9

*Auth.*, 589 S.W.2d at 678). Additionally, ACI bears the burden on appeal of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.*

We review the district court's rulings concerning the admission or exclusion of summary-judgment evidence for an abuse of discretion. *See, e.g.*, *Fairfield Fin. Group, Inc. v. Synnott*, 200 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.) (admission of summary-judgment evidence); *Cruikshank v. Consumer Direct Mortgage, Inc.*, 138 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (exclusion of summary-judgment evidence). An abuse of discretion exists only when the court's decision is made without reference to any guiding rules and principles or is arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We must uphold the district court's evidentiary ruling if there is any legitimate basis for it. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35,43 (Tex. 1998). Moreover, we will not reverse a judgment based on a claimed error in admitting or excluding evidence unless the complaining party shows that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *Malone*, 972 S.W.2d at 43; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

We need not reach FCB's first issue urging that Botelo's affidavit must be excluded under 39 C.F.R. § 265.12.[3] Even if the Botelo affidavit is excluded, as FCB urges, we conclude

---

[3] We hold that the district court did not abuse its discretion in excluding the two letters from the USPS paralegal as hearsay. FCB insists that it "did not offer the Letters into evidence to prove the truth of the matters contained therein; rather, FCB offered the Letters to show that both FCB

10

that ACI met its initial summary-judgment burden to conclusively establish that it did not receive the required notice of the assignment before August 2007. We have previously summarized ACI's summary-judgment evidence. The testimony of Mistler and Danzy that ACI personnel did not receive a notice letter or any certified letter from FCB and did not receive or sign the green card on which FCB relies was clear, positive, direct, free of inconsistencies, and capable of being readily controverted. *See* Tex. R. Civ. P. 166a(c). The burden thus shifted to FCB to present competent summary-judgment evidence raising a fact issue on that point.

To raise a fact issue, FCB relies on Brower's affidavit and attachments. In its second issue on appeal, FCB complains of the district court's "exclusion" of the Brower "business records affidavit . . . includ[ing] copies of the Green Card, the Certified Mail sender's receipt of the assignment letter sent to ACI, [and] a printout of a United States Postal Service internet page confirming delivery of the assignment letter." FCB recites the requirements for proving up business records, asserts generally that Brower's testimony met these standards, and concludes that the district court's "exclusion" of the Brower affidavit "constitutes reversible error and abuse of discretion because the Green Card clearly creates a genuine issue of material fact."

FCB's arguments do not correspond to the ruling the district court actually made. The court did not exclude the entire Brower affidavit, only certain portions of it. The following statements were excluded:

---

and ACI had notice of their receipt and is thus an exception to hearsay under Tex. R. Evid. § 801." But on appeal, as well as in its summary-judgment response, FCB relies on the *contents* of the letters to support its argument that the Botelo affidavit should be excluded because ACI purportedly obtained it in violation of 39 C.F.R. § 265.12.

11

- "A true and correct copy of the American Constructors, Inc. green card is included in Exhibit 'D-1.'"

- "This letter [referring to the purported 'reprint'] was mailed to American Constructors, Inc. certified/return-receipt requested and the receipt is maintained in the file, according to our policies and procedures. When the green card is return[ed], it is placed into the same file. As shown in Exhibit 'D-1,' the tracking number from the receipt and the green card match up."

- "The reprint of the letter to American Constructors, Inc. shows that it was mailed on or about March 21, 2006 [sic]."

Moreover, the district court admitted all of the affidavit's attachments, including the green card, white sender's receipt, and USPS website printout, except for the purported "reprint" of the notice letter, which was excluded.

The evidence excluded by the district court was flatly inconsistent with Brower's prior deposition testimony. During her deposition, Brower admitted that neither she nor anyone at FCB had personal knowledge whether any form of notice letter had been sent to ACI, whether a notice letter or green card had ever actually been delivered to ACI, who had signed the green card, or when. In her affidavit, by contrast, Brower averred that she had personal knowledge that a specific notice letter—the "reprint" dated March 21, 2007—had been sent by certified mail to ACI and that the green card was "[a] true and correct copy of the American Constructors, Inc. green card." To be competent summary-judgment evidence, affidavits must be made on personal knowledge, *see* Tex. R. Civ. P. 166a(f), and Brower's deposition testimony demonstrates that she did not have personal knowledge of these facts. While Brower recites in her affidavit that her testimony "is based on my personal knowledge and experience," she provides no basis for any sudden claim to personal knowledge. FCB has not shown that the district court abused its

12

discretion in excluding this evidence. *See Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin 2001, no pet.) (discussing "sham" affidavits); *Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ("Without an explanation of the change in testimony, we assume the sole purpose of the affidavit was to avoid summary judgment."). We overrule FCB's second issue.

As for the evidence that was admitted—the green card, white sender's receipt, USPS web page printout, FCB computer records printout, and other testimony by Brower—it demonstrates only that a document was sent by FCB via certified mail to ACI's address in March 2007, that a green card signed "Amer Cont" by an unidentified person purporting to act as an agent of ACI and indicating receipt on March 26, 2007 was returned to FCB, and that the postal-service website indicates that a certified letter bearing the tracking number corresponding to the green card and white sender's receipt was delivered on that date somewhere in the same area code where ACI's offices are located. This evidence falls short of controverting ACI's evidence that it never received a certified letter or other document from FCB in March 2007 and that the "Amer Cont" signature on the green card was not that of any ACI employee or agent. *See Smith v. Holmes*, 53 S.W.3d 815, 817-18 (Tex. App.—Austin 2001, no pet.).

In a final alternative argument on the question of receipt, FCB urges that Botelo's affidavit, if admitted, raises a fact issue as to whether he delivered the certified letter with the green card to ACI. Botelo, as noted, admitted that his "standard delivery practice for delivering certified mail to the businesses within ACI's office building" was to "sign myself all certified mail receipts for the various businesses located in the building" and that he had been the person

13

who signed the green card "Amer Const." FCB did not present any evidence that Botelo had been authorized to sign for certified mail on ACI's behalf; consequently, the affidavit, if admitted, would be additional proof negating ACI's receipt of notice. *See City of Houston v. Riner*, 896 S.W.2d 317, 319-20 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (holding notice ineffective when security guard signed and accepted mail on behalf of building occupant without occupant's authority); *United Nat'l Bank v. Travel Music of San Antonio, Inc.*, 737 S.W.2d 30, 31-32 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (holding notice ineffective when signed for by someone other than the intended addressee). FCB emphasizes, however, that Botelo testified he would, after signing the green cards, "then deliver the mail to the various mailboxes." FCB reasons that Botelo's statement presents a fact issue as to whether he correctly deposited the notice letter in ACI's mailbox. Without more, we cannot agree. At most, Botelo's statement might support the inference that he deposited the certified letter in one of the building's mailboxes, but it does not controvert ACI's evidence that the letter never made it to ACI. *See Smith*, 53 S.W.3d at 818.

Because FCB failed to present competent summary-judgment evidence raising a fact issue as to whether ACI received the required notice of the assignment prior to August 2007, the district court properly granted summary judgment on ACI's affirmative defense that FCB failed to comply with business and commerce code section 9.406. We overrule FCB's fourth issue. We need not reach FCB's third issue challenging the alternative summary-judgment ground that any assignment by CoCom was invalid.

14

# CONCLUSION

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   May 21, 2010